THE CHURCH EXTENSION OF THE METHODIST EPISCO-
PAL CHURCH, and others vs. MARGARET . ANN
SMITH, by her next friend, FERDINAND GUERKE.
MARGARET ANN SMITH, by her next friend, FERDI-
NAND GUERKE vs. THE CHURCH EXTENSION OF
THE METHODIST EPISCOPAL CHURCH, and others.

*Construction of a Will—Conversion of Realty into Person-
alty—Bequest to a foreign Religious corporation—Bequest
to a Pastor—Bequest to domestic Religious corporations—
Legislative sanction required by Art. 38, of the Bill of
Rights—Bequests void for Indefiniteness—Residuary be-
quests—Residue of a Residue—General legacies.*

S. D. C. died in June, 1876, leaving a will, executed on the 2nd day
of March, 1870, which was admitted to probate July 11th, 1876,
whereby (after making several bequests to friends,) she devised
and bequeathed "all the rest and residue of her estate to her
executor, in trust, to sell, and out of the proceeds to pay the fol-
lowing legacies, to wit: to the Missionary Society of the Methodist
Episcopal Church, incorporated by the Legislature of New York,
$4500; to the Methodist Preachers' Aid Society of Baltimore,
$4500; to the Home of the Aged of the Methodist Episcopal
Church, of Baltimore, $5000; to the Church Extension of the
Methodist Episcopal Church, incorporated by the Legislature of
Pennsylvania, $10,000, to be used as part of the Perpetual Loan
Fund of said society, and to bear the name of the "Durham Loan
Fund;" to the Trustees of the Strawbridge Methodist Episcopal
Church of Baltimore, $2000; to the Trustees of the United Pres-
byterian Church of Baltimore, $1000; to her "highly esteemed
friend and pastor," the Reverend L. M. G., as a token of her respect
and gratitude, $5000; and to her Executor, $500, to be invested by
him, and the interest applied in keeping in order her lot and
family vault in Greenmount Cemetery. The will further provided,
that should the proceeds of said property when sold and con-
verted into money, be more than sufficient to pay the aforegoing

APRIL TERM, 1881.        363

Church Extension of the M. E. Church, *et al. vs.* Smith, &c.

legacies in full, then the surplus should be distributed among all
the legatees ratably; but in case the proceeds should be insuffi-
cient to pay the said legacies in full, then I direct that the same
shall abate ratably.   By a codicil,, dated Nov. 30th, 1875, and
duly admitted to probate, she directed that $1000 should be paid
to the Trustees of the Strawbridge Methodist Episcopal Church,
of Baltimore, for the benefit of the Ladies' Mite Society of the said
Church; and a like sum to the Baltimore City Missionary and
Church Extension Society of the Methodist Episcopal Church.
The Legislature, by the Act of 1878, ch. 56, gave its sanction to
these several bequests.   The Ladies' Mite Society was a voluntary
unincorporated association; all the other societies were incorpo-
rated, either under the laws of this State, or of some other State,
some by special Acts, and some under the general incorporation
law; and all of them were authorized, by their charters, to take
and hold both real and personal estate by gift, grant, devise,
bequest or otherwise, up to a certain limit, which would not be
exceeded by the allowance to any. of them of the legacy above
given.   The Church Extension Society, of Pennsylvania, had a
fund, known as the Perpetual Loan Fund, which was applied to
aid such necessitous Methodist Churches in the United States as a
committee appointed by the General Conference might select; and
the society allowed any one donating $5000, or more, to the said
Loan Fund, to designate the name by which such contribution
might be known.   The executor converted the estate into money,
and the amount realized was insufficient to pay all the legacies in
full.   In October, 1877, M. A. S. filed her bill, as heir-at-law and
next of kin to the testatrix, in the Circuit Court of Baltimore City,
asking to have the said several legacies declared void, and the
amounts thereof paid over to her.   HELD:

1st. That while a foreign religious corporation may not be able to
hold land, or any interest in land, in this State, yet where, as in
this case, the will directs a conversion of the realty into personalty,
a bequest of the proceeds to such a corporation will be upheld.

2nd. That the bequest " to my esteemed pastor and friend, the Reverend
L. M. G.," being a gift to him in his personal and individual
character, and not in his character of minister or preacher, is not
within the terms of the 38th Art. of the Bill of Rights, and is
consequently valid.

3rd. That the power to take and hold property, by gift, grant, devise
or otherwise, expressed in the charter of a religious corporation,
whether the same be created by express legislative enactment, or

formed under the general corporation law, cannot be construed as the sanction by the Legislature required by Art. 38, of the Bill of Rights. The true intent and meaning of that Article is, that the sanction of the Legislature must be expressly given to each particular devise or bequest to render it valid.

4th. That such legislative sanction is sufficient if obtained within a reasonable time after the death of the testator; and the rights of the heir and next of kin vest subject to be divested upon the happening of the contingency of the sanction being obtained, nor need the will provide for such sanction. The rules in regard to other cases of executory devises, viz., that they must be made in words of the future tense, and that the will must show the contingency upon which they are to vest, and provide on its face for the contingency happening within the period prescribed to prevent perpetuities, do not apply. ·

5th. That the bequest to the executor for the purpose of keeping in order the lot and vault of the testatrix is void, as attempting to create a trust which cannot be enforced.

6th. That the bequest to the Church Extension of the Methodist Episcopal Church, of Pennsylvania, to be used as part of the Perpetual Loan Fund, is void. As the Perpetual Loan Fund consists of a fund set apart to be loaned to necessitous Methodist Churches in the United States, the bequest becomes a gift, not to the corporation for its own use, but to it as trustee for this class of indefinite beneficiaries.

7th. That a bequest to a voluntary, unincorporated association is void, as there is no *cestui que trust*, who can enforce its execution in equity.

8th. That while the rule is well settled, that where a bequest of personal property is void, the property falls into the residue and passes to the residuary legatee, yet, where a portion of the residuary bequest itself fails to become operative, the portion thus failing will not go to increase the other portions of the *residuum*, as a residue of a residue, but passes to the next of kin as property not disposed of by the will.

9th. That in this will, the true residuary clause is the one whereby the testatrix provides for a surplus or deficiency; and not the earlier clause, whereby she gives " all the rest and residue " of her · estate to the executor, to be sold, and out of the proceeds to pay the several legacies.

10th. That where there are general legacies they must be paid in full, and they cannot be called upon to abate in favor of the next of kin on account of certain other legacies proving invalid.

CROSS-APPEALS from the Circuit Court of Baltimore City.

In June, 1876, a certain Susie Duke Callow died, having previously executed a last will and testament on the 2nd day of March, 1870, and a codicil thereto, dated November 30th, 1875, both of which were duly admitted to probate on July 11th, 1876. The said will, after disposing of several specific legacies, provided as follows : "All the rest and residue of my estate, real, personal and mixed, I give, devise and bequeath to my friend, Samuel G. Taylor, whom I hereby appoint executor of this, my will, in trust, that he will sell the same as soon after my death as practicable, to the best advantage, and after the payment of my debts and funeral expenses, out of the proceeds, pay the legacies following, to wit:

"1. To the Missionary Society of the Methodist Episcopal Church, incorporated by the Legislature of the State of New York, the sum of $4500.

"2. To the Methodist Preachers' Aid Society of Baltimore, the sum of $4500.

"3. To the Home of the Aged of the Methodist Episcopal Church of Baltimore City, the sum of $5000.

"4. To the Church Extension of the Methodist Episcopal Church, incorporated by the Legislature of Pennsylvania, the sum of $10,000 ; to be used as part of the "Perpetual Loan Fund" of said society, and to bear the name of the Durham Loan Fund.

"5. To the Trustees of the Strawbridge Methodist Episcopal Church, at the corner of Garden and Biddle streets, the sum of $2000.

"6. To the Trustees of the United Presbyterian Church, at the corner of Madison avenue and Biddle street, the sum of $1000..

366        MARYLAND REPORTS.

Church Extension of the M. E. Church, *et al. vs.* Smith, &c.

"7. To my highly esteemed friend and pastor, the Reverend Leonard M. Gardner, as a token of my respect and gratitude, the sum of $5000."

Then follow Nos. 8, 9, 10, 11, 12 and 13, which are legacies to servants and friends; and then the will provides:

"14. To my executor, Samuel G. Taylor, five hundred dollars, to be invested, and the interest thereon to be applied by him to the keeping in order of my lot and vault in Greenmount Cemetery.

"Should the proceeds of said property, when sold and converted into money, be more than sufficient to pay the aforegoing legacies in full, it is my will, and I do hereby order and direct my said executor to distribute the surplus remaining in his hands among said legatees *pro rata.* And in case the proceeds should prove insufficient to pay said legacies, it is my will, and I do order and direct the same ratably."

The codicil of November 30th, 1875, provided as follows: "Mrs. Matilda Christopher having departed this life since the making of my will, I revoke the bequest of $2000 therein made to her, (this was No. 8 in the will,) and in lieu thereof, direct that $1000 of said bequest shall be paid to the Trustees of the Strawbridge Methodist Episcopal Church, for the benefit of the Ladies' Mite Society of the said Church, situated at the corner of Garden and Biddle streets, in the City of Baltimore. The remaining $1000 of said sum of $2000, I give and bequeath to the Baltimore City Missionary and Church Extension Society of the Methodist Episcopal Church, incorporated under the general laws of the State of Maryland."

The executor turned the estate into money, and the amount realized was insufficient to pay all the legacies in full.

The Legislature, by the Act of 1878, ch. 56, gave its sanction to the several bequests contained in the will and codicil.

Thirteen months after the will and codicil were admitted to probate, Margaret Ann Smith, by next friend, as heir-at-law and next of kin to the testatrix, filed her bill in the Circuit Court of Baltimore City, asking to have all the above legacies, except those to servants and friends, declared void, and the proceeds in the hands of the executor paid over to her. The above corporations were all duly incorporated, some under the general incorporation law, the others by special Acts; and their several charters authorized them to take and hold property, both real and personal, by gift, grant, purchase, devise or bequest, up to a certain amount; and this limit would in no case be exceeded by allowing the legacies above given. The Church Extension of the Methodist Episcopal Church, organized under the laws of Pennsylvania, had for its object as declared by its charter, to aid such necessitous Methodist Churches in the United States, as might be selected by a committee appointed by the General Conference of the Methodist Episcopal Church; which aid was extended either by donations or loans. Its charter allowed the donor to designate in what manner the gift should be used, and also to give a name to the gift, if it was intended to be a part of the loan fund, provided it amounted to $5000 or over; and it further provided that the said loan fund should always be kept intact. The Ladies' Mite Society was a voluntary, unincorporated association, composed of members of the Strawbridge Methodist Church, organized under its auspices for the purpose of purchasing and keeping in repair the furniture and fixtures of the Church and parsonage, and its funds disbursed by its own members, subject to the permission of the said Church. The Rev. Leonard M. Gardner was a minister of the Methodist Episcopal Church, and at the date of the will was pastor of the testatrix, but at the date of her death, was in charge of another church.

The Circuit Court decreed the legacies Nos. 1, 2, 3 and 7, to be valid; and Nos. 4, 5, 6 and 14, and the two lega-

cies of $1000 each given by the codicil, to be invalid ; and ordered the amounts which would be due on account of the several invalid legacies, to be paid over to the complainant, as heir-at-law and next of kin.   From that decree, these appeals are taken.

The cause was argued before BARTOL, C. J., MILLER, ROBINSON and IRVING, J.; and submitted on brief for The Home of the Aged of the Methodist Episcopal Church.

*R. W. Baldwin*, and *John Carson*, for The Church Extension of the Methodist Episcopal Church, of Pennsylvania.

The appellant is a corporation created by a special Act of the Legislature of Pennsylvania, of March 13th, 1865.

By the first section of its charter, *unlimited* power is given to it to take personalty by gift or bequest, but its power to take realty is limited to an income of $100,000 per annum.   It is admitted, however, that its income is below that amount, and its power to take and hold personalty being unlimited, there is no question of the *power* of the corporation to take this legacy.

The 38th Article of our Bill of Rights does not affect this legacy, as the appellant is a foreign corporation, and it is a matter of no concern to our State, whether property shall accumulate in the hands of a foreign corporation or not.   *Vansant vs. Roberts*, 3 *Md.*, 119 ; *Brown, Adm'r vs. Thompson, et al.*, 49 *Md.*, 431.

Judge GILMOR's chief objection to this legacy is, that it is too *indefinite*, because its beneficiaries are such necessitous Methodist Churches, as may be selected by a committee of the corporation.   The proposition is this—if a corporation is created by law for certain purposes, and is authorized by law to receive money for these purposes, and to use this money for such corporate purposes as the corporation may determine, and a legacy is absolutely

given to the corporation for corporate purposes as aforesaid, yet, it is competent for any Judge to say that in his opinion the purposes of such corporation are too indefinite, and cannot, therefore, be legally accomplished. If this view be sound, it practically ends all corporations for religious or charitable purposes.

The case of *Dashiell vs. Att'y-Genl.*, 5 *H. & J.*, 400, is relied on as authority for the above view. There, the Court said, " no discretion is here given to the trustees to select the poor ; if there was a discretion in them to select, the case, &c. ;" and Judge GILMOR wholly overlooks the fact that one of the very objects of a corporation is to provide the discretion and selection above mentioned.

This objection of uncertainty and indefiniteness has been well answered by the Supreme Court, in *Ould vs. Washington Hospital*, 95 *U. S.*, (5 *Otto*,) 303. The Court there say " the objection of uncertainty in this case, as to the particular foundlings to be received, is without force. The Hospital being incorporated, nothing beyond its designation as donee is necessary. Who shall be received, with all other details of its management, may well be committed to those to whom its administration is entrusted."

So here, what necessitous Methodist Churches are to be aided, together with the details of management, may well be left to the corporation to whom its administration has been absolutely committed by the testatrix. The general rule is, that a corporation may take property given in trust for any object not foreign to the scope of its incorporation. 1 *Perry on Trusts*, secs. 42, 45 ; *Angell & Ames*, sec. 168 ; *Vidal vs. Girard*, 2 *How.*, 189 ; *Perin vs. Carey*, 24 *How.*, 495, 505 ; *Ould vs. Washington Hospital*, 95 *U. S.*, 303 ; *Chapin vs. Schort*, 35 *N. H.*, 445 ; *In re Howe*, 1 *Paige*, 214.

Judge GILMOR says, " the testatrix did not give this legacy to the corporation generally, but as part of the Perpetual Loan Fund ; and in so doing she carved out a

sort of ulterior special bequest, creating a trust in favor of an object not clearly defined. This is insufficient, for, by the agreement of facts, the beneficiaries of the Loan Fund are such ' necessitous ' Methodist Churches as may be selected by a committee of the corporation."

Now, the agreement of facts shows the workings of this corporation. It aids necessitous Methodist Churches in two ways, 1st, by donations; 2nd, by loans. By the first mode, the money is absolutely given away; by the second, it is only loaned, the *fund being always kept intact.* Her will shows that when she made this bequest, she had in view the two modes of working of the corporations, and she chose one and rejected the other. She did not wish her money to be given away in donations, but to be perpetuated as part of the Loan Fund. By this bequest, therefore, she intended to create a trust in four respects, viz., 1st. That the corporation should loan this fund to necessitous Methodist Churches. 2nd. That the principal should never be diminished. 3rd. That it should be a separate Loan Fund, having the name of " The Durham Loan Fund." 4th. The proper officer is to report annually the investment, and the work accomplished.

These four trusts the testatrix wished, and these four trusts the corporation is performing daily. None of them are illegal, or opposed to public policy, and the first two are, as charitable trusts, manifestly for the public good; and this is all the Court need determine.

If the corporation failed to perform any of the above trusts, *the fund would not revert,* there being no clause to that effect in the will, but performance could be enforced in equity. 2 *Perry on Trusts, sec.* 747. The bequest being absolute, it is unnecessary to consider whether naming the fund, or keeping it separate, are of the essence of the testatrix's bequest and binding on the corporation. (See 2 *Perry, sec.* 738 ; 2 *Red. on Wills, p.* 548, *sec.* 71 ;) because this corporation has performed both of these

APRIL TERM, 1881.                    371

Church Extension of the M. E. Church, *et al. vs.* Smith, &c.

trusts, as is shown in their reports, and has pledged itself to continue to perform them in the resolution offered in evidence.

It is further objected that so much of this bequest as is the proceeds of realty is bad, because a foreign religious corporation cannot take realty,—at least without the sanction of the Legislature, as provided for by the Bill of Rights. We submit that an immediate devise of the realty to this corporation would be good. *Vansant vs. Roberts*, 3 *Md.*, 119; *Christian Union vs. Yount*, 101 *U. S.* (11 *Otto*, 352.) Moreover, the will works a conversion of the whole estate into personalty. *Thomas vs. Wood*, 1 *Md. Ch. Dec.*, 296; *Carr vs. Ireland*, 4 *Ib.*, 251; *Newcomer vs. Orem*, 2 *Md.*, 297; *Hurtt vs. Fisher*, 1 *H. & G.*, 88; *Smithers vs. Hooper*, 23 *Md.*, 273; *Cronise vs. Hardt*, 47 *Md.*, 438; *Orrick vs. Boehm*, 49 *Md.*, 105.

The general rule is that where a part of the residuary bequest fails, it goes to the next of kin, and not to the residuary legatee. 2 *Red. on Wills, p.* 119, *par.* 8. But in this case, that rule would defeat the manifest intention of the testatrix, if the clause giving " all the rest and residue of her estate," is treated as the residuary clause. The true construction of this will is that, while the bequest is in form residuary, it is a bequest of *particular legacies;* (2 *Red. on Wills, p.* 120, *par.* 9;) and the real residuary clause is the gift of the surplus to be divided *pro rata* among the several legatees. The first clause contemplates that there may still be a surplus; that being the real residue, is divided *pro rata.* In no other way can the intention of the testatrix be accomplished. *In re Lyne's Estate*, 8 *Eq. L. T.*, 485; *Page vs. Leapingwell*, 18 *Ves.*, 463; *Easum vs. Appleford*, 5 *My. & Cr.*, 56; 2 *Red. on Wills, p.* 120, *par.* 9, *n.* 39.

A particular residue will take lapsed legacies, belonging to that particular fund, the same as a general residue in ordinary cases. *De Trafford vs. Tempest*, 21 *Bea.*, 564.

Church Extension of the M. E. Church, *et al. vs.* Smith, &c.

*J. Upshur Dennis, James A. McClure,* and *Danl. B. Lucas,* for the heir-at-law and next of kin, contended:

I. Art. 38 of our Bill of Rights declares that *every* devise or bequest of lands and of goods or chattels, to or for the benefit of any minister, public teacher or minister of the Gospel, as such, or any religious sect, order, or denomination, without the *prior, or subsequent sanction* of the Legislature, shall be *void.*

The bequest to the New York and Pennsylvania corporations, in so far as they are the proceeds of realty, and the bequests *in toto* to all of the domestic religious corporations, are void for the reason that none have ever received a sufficient sanction by the Legislature.

1. It is contended that the *prior* sanction of the Legislature has been given to these bequests, by those provisions of the laws under which these institutions were incorporated, which provide that they may take and hold property, by gift, grant, devise or otherwise up to a certain limit.

We deny that such provisions can be construed as in any sense the *sanction* of the Legislature which is required by the Bill of Rights.

A corporation, being an artificial creature, has no powers or rights whatever except such as are given either expressly or by fair implication. It being essential to the usefulness and efficiency of every corporation that it should have the power to acquire and hold property, every Act of incorporation, whether under the general or a special law, must contain a provision giving the corporation such power. This is true of every corporation, lay as well as ecclesiastical; the *corporate capacity to take* must be given it. To vest such a power was the sole effect and extent of the provisions which have been invoked here as constituting the legislative sanction. Otherwise, the requirement of the Bill of Rights is meaningless, and only supererogation; for its framers must have

known that every corporation, *just from the fact of its being one,* must have already had the power to take property given it. So, when they provided that every *religious* corporation must have a prior sanction to every bequest to it, it is manifest they intended by this requirement something additional to what the corporation already possessed by the mere fact of its being a corporation. The *sanction to take* a gift is a very different thing from the *capacity* to take it; it is something superadded. It entirely destroys the efficiency of the Bill of Rights, to hold that all a religious body has to do is to become incorporated, and then it has for all time to come the sanction of the Legislature to every acquisition and accumulation of property; for, while the amount which each one can hold may be limited, there is no limit to the number of such corporations that may be formed, and their multiplication would thus secure to religious institutions accumulations of wealth, against which this provision is aimed.

The phraseology is to be noted. It declares "*every* gift, sale, &c.*" without a sanction, void. The pronoun is distributive, and suggests that *each case* is to be made an independent object of legislative scrutiny, and not all lumped together in a general law. Thus, another object of the Bill of Rights—the protection of the rights of the heir—is secured against the paramount influence, at the death-bed, of the spiritual adviser; when such bequests have to be supervised by some authority which can decide whether they are unnatural or proper.

The legislative practice is in harmony with this view; and we find, from the earliest times, that Acts specially ratifying individual bequests, have always been deemed necessary. Such long continued and unvarying practice, at the instance of the legal advisers of these corporations, we take to be high evidence that such special acts of sanction were deemed necessary in law both by such counsel and the Legislature itself.

This point seems (from the record in the case, though it does not appear distinctly in the report as given in 49 *Md.,*) to have been decided by this Court in the recent case of *Orrick vs. Boehm,* in its construction of the bequest there to the Lutheran Congregation of Boonsborough. There was no special act of sanction to that bequest, but reliance was put entirely upon the power to take given by the Act of incorporation, as constituting a prior legislative sanction. The bequest was held void, and it is difficult to determine upon what other ground than the fact that it had never received a proper sanction.

2. The Act of 1878, ch. 56, is not a sufficient *subsequent* sanction to validate these bequests. This Act was obtained more than a year after the testatrix's death, and after the bill had been filed to have these bequests declared void.

The phraseology of the Bill of Rights is very stringent. No gift to any religious body can take effect until it has been subjected to legislative scrutiny. The bequest does not vest, subject to being divested, if the sanction is refused; it is declared to be *void* until that sanction is given. At the death of the testator, therefore, the bequest is absolutely void, by the express words of the Bill of Rights. The provision is also cumulative. No subsequent sanction will cure a bequest which is defective for any other reason; it simply furnishes a means of removing, from a bequest in every other respect unassailable, the bar interposed by the Bill of Rights; notwithstanding such sanction, every other formality essential to its validity must be complied with.

This sanction is, also necessarily *in futuro,* and *contingent.* The Legislature may either give or refuse it; the Bill of Rights requires them to exercise a discretion. Moreover, one Legislature may refuse, and the next, or the next, may give it; no time is fixed within which it must be obtained, or applied for. The sanction is, there-

fore, necessarily *contingent*, both as to *when* it will be given and *whether* it will ever be given. We have then a bequest which is to take effect *in futuro*, and upon the *happening of a contingency*. No preceding estate is given— no remainder created; and the only manner in which such a future estate can arise is as an *executory bequest*.

In this respect, the will in this case is fatally defective.

*First.* As every executory bequest can only vest *in futuro* upon the happening of a contingency, the will must contemplate *on its face such contingency, and provide for the estate to vest upon its happening;* in other words, the bequest must be created by *words of the future,* and *not of the present, tense.* The will must not use words which purport to vest the estate at the death, when it can only vest at some future time. It cannot, for example, give an estate to vest at once in an institution not yet incorporated, so that the bequest can take effect when the institution subsequently becomes incorporated; it must give it in such terms that the estate will arise when the incorporation takes place, and shift to the corporation as legatee. If the bequest is to one as entitled to take *at once upon the death,* when in fact he can only take at some future time and perhaps never, the bequest is void. The familiar example given in the books is : An estate to the first son of A., when A. has no son, is void, because given in the *present tense;* an estate to the first son of A. *when he shall have one,* is good, because there the testator shows he only contemplates the vesting of the estate upon the happening of the contingency.

The reason is plain. The law will not make a will for a man; and if he chooses to make a bequest take effect and the property to vest at one time, the Court can only construe his own words, and cannot do violence to them by making the estate vest at some other time.

In this case, the will makes all the bequests take effect at the death of the testator. Those to relations and friends

indisputably vested then; and those disputed bequests: are given in the same words. How can a Court make these latter vest at a period different—perhaps years removed—from the time the testatrix said they should vest? They must vest as *she said,* or not at all, and she said *now,* or *never.*

*Second.* This will violates another fundamental rule applicable to executory bequests, viz., that the *contingency upon which the estate is to vest must appear upon the face of the will itself as bound to happen within the period. established against perpetuities. Newton vs. Griffith,* 1 *H. & G.,* 125; *Tongue vs. Nutwell,* 13 *Md.,* 425; *Deford vs. Deford,.* 36 *Md.,* 176, *&c.*

In this case, the will prescribes no time within which the sanction of the Legislature is to be obtained; the Bill of Rights prescribes none; no Act of the Legislature pre-- scribes any; the whole life of the State is the only limit fixed. Until such sanction, the estate must vest in the heir; the executor has no right to hold it beyond the time allowed him to settle the estate. Some time must be- fixed within which the sanction must be obtained. It would never do to allow the estate to vest in the heirs— to be enjoyed by them, perhaps, for years—and then to be divested by a subsequent sanction—uncertain when it would be given, uncertain if it would ever be given—and the heirs held accountable for the rents and profits during the time of their enjoyment. If they wished to sell, they could give no title, as no purchaser would be willing to battle for his rights before the successive Legislatures. Thus, unless some time is fixed for obtaining this sanc- tion, we have all the evils of a perpetuity. What is that time? The Bill of Rights fixes none, nor does the will; yet the inexorable rule is that no estate shall be forever put *extra commercium.* The only limit that can be imposed is that found in the principle applicable to every execu- tory bequest, viz., that the will must show that the con-

tingency is to happen within a life or lives in being, and twenty-one years thereafter. Thus only can confusion and anomaly be avoided.

Indisputably the above rules must be conformed to by every executory bequest in favor of a private person; why should an exception be made in favor of institutions who are specially discriminated against by our organic law? If the necessity for fixing in the will the period for the contingency to occur, is reasonable and proper in the case of individuals and lay corporations, certainly that class of whom the law is so jealous, have no right to complain if the same restraint is imposed on them.

Must the sanction be obtained at the first Legislature after the death? If so, why so, more than at the second or third?

To confine the right to obtain the sanction to the first Legislature, would be manifestly unjust to these corporations, as many causes might arise to prevent the passage of the necessary act. Nor has such been the legislative practice; in one case we find the sanction was obtained *thirty-seven years* after the death.

If the bequest, therefore, was void at the death, and was not properly kept alive to await the legislative sanction, the estate vested at the death in the next of kin, and when once vested it became irrevocably fixed beyond the power of the Legislature to divest it. If it did not vest in him, what became of it? Must the executor hold it to await a sanction which perhaps might never be given? Under the Statute of 43 Elizabeth, in such a case the Court of chancery would hold the fund; but that Statute has never been in force here. Suppose this case had been brought to a decree before the act of sanction was passed, what must the decree have been? necessarily in favor of the next of kin; and yet if a subsequent sanction can divest vested rights, it can do so as well after as before a decree; for a decree does not *give*, but only *declares* rights.

As to divesting vested rights, see *Warren's Case*, 28 *Md.*, 352; *Dumfries vs. Abercrombie*, 46 *Md.*, 179, (*at bottom;*) *Rock Hill College Case*, 47 *Md.*, 18; *Benet vs. Oliver*, 7 *G. & J.*, 207; *Regents vs. Williams*, 9 *G. & J.*, 408; *Wildeman vs. Mayor & C. C.*, 8 *Md.*, 555; *Rennett's Case*, 24 *N. H.*, 139.

The application of the above principles to bequests like those under consideration, seem to be established beyond question. See *Baptist Association vs. Hart's Executors*, 4 *Wheat.*, 1; *Inglis vs. Trustees*, 3 *Peters*, 114, 115, 142, 143 and 149; *Leonard vs. Burr*, 18 *N. Y.*, 96, 107; *Phelps vs. Pond*, 23 *N. Y.*, 77; *Bascom vs. Albertson*, 34 *N. Y.*, 595; *Warren's Case*, 28 *Md.*, 338.

Is not *Warren's Case* conclusive authority upon the question in this State? There the devise was held void, because the institution which was to take was not *in esse* at the time when, under the will, the estate must have vested, if ever; the fact that subsequently it became incorporated, and capable of holding, made no difference. Had the devise there been given to vest upon the contingency happening, and had the will provided it should happen within the period against perpetuities, the devise would have been good; but the devise was made in the *present tense*—the estate was to vest *eo instanti* with the death; and to have made it vest *in futuro* upon the institution becoming incorporated, would have been to make the will take effect at a different period from that fixed by the testator—though not different from what he intended. What difference is there between that case and this? There the devise was void, because the institution to take was not *in esse;* here it is void, because the Bill of Rights declares it so; in such case, it is void at the time of death, but no more void in the one case than in the other; and there the Court says, the fact of the institution subsequently becoming incorporated and capable of taking, could not divest the rights of the heir which

vested *eo instanti* with the death. Upon the same prin-
ciple, no legislative sanction to these bequests, can divest
the rights of the next of kin which vested at the death.
See, to the same effect, *Wildeman's Case,* 8 *Md.,* 555.

Our proposition is, that in all cases of gifts by will
which are declared void by this Article of the Bill of
Rights, the estate vests *eo instanti* with the death in the
next of kin; and it can only be divested through the
operation of an executory bequest, making the estate
shift to the legatee upon the happening of the legisla-
tive sanction; and that every will, therefore, making
such gifts, must conform to the fundamental rules appli-
cable to all cases of executory bequests, by providing for
the contingency upon which the estate is so to shift, and
by further providing that such contingency must occur
within the period established against perpetuities. Here,
the sanction is all right; but the *will is improperly framed.*

II. The following bequests are void for indefiniteness:

1. To the Church Extension Society of the Methodist
Episcopal Church, of Pennsylvania, to be used as part
of the Perpetual Loan Fund, and to bear the name of
the Durham Loan Fund. The agreement of facts shows
that this Loan Fund was to be used for the benefit of such
necessitous Methodist Churches throughout the United
States, as might be selected by a committee appointed by
the General Conference of that Church. When the testa-
trix, therefore, gave this bequest, it is manifest she did
not intend it to be used for the *general* purposes of the
corporation, but that it should forever be kept apart and
used for a class, as well defined as any indefinite class can
be; and to emphasize this trust, she ear-marked it by the
name of the Durham Loan Fund.

The Statute of 43 Elizabeth, in relation to charities not
being in force in this State, it has always been held that
such words as "poor," "necessitous," &c., are too indefi-
nite a description to support a bequest to beneficiaries

380        MARYLAND REPORTS.

Church Extension of the M. E. Church, *et al. vs.* Smith, &c.

thus described, for the reason that no Court can determine who is a proper *cestui que trust* to file a bill in equity, to enforce the bequest. Under that test, this bequest must fail. *Dashiell vs. Attorney-General*, 5 *H. & J.*, 392; *Same Case*, 6 *H. & J.; Wildeman vs. Mayor & C. C.,* 8 *Md.*, 555; *Orrick vs. Boehm*, 49 *Md.*, 105.

2. The bequest to the Trustees of the Strawbridge Church for the benefit of the Ladies' Mite Society. This being a gift for the benefit of a voluntary, nnincorporated institution, composed of the "lady members" of that Church, is void, for the same reason as the last.

3. The bequest to the executor to keep the lot and vault in Greenmount Cemetery in order. This is also void, for the same reason.

In the event of a perversion, or misapplication of the trust fund in any of these three cases, there is no *cestui que trust* who could apply in equity for a remedy.

(The argument as to whether the Preachers' Aid Society, and the Home of the Aged of the M. E. Church, are *religious* corporations, within the meaning of the Bill of Rights, is omitted, as that point is not passed upon by the Court. REP.)

III. The bequests to the two foreign corporations, in so far as they are charged on *realty*, are within the prohibition of the Bill of Rights.

Such corporations are exempt from the operation of the Bill of Rights, so far as *personal* property is concerned. *Vansant vs. Roberts*, 3 *Md.*, 119. The question is, can the provisions of the 38th Art. be evaded, by devising land to be sold, and the proceeds to be paid over, instead of a direct devise of the land itself.

A devise of land gives the devisee an immediate interest in the land itself. If the executor fails, or refuses to sell, he has a standing in Court to compel the sale. He has also the power to elect and take the land itself. *Van-*

*sant vs. Roberts,* declares that this 38th Article is equivalent to the British Statutes of Mortmain; and the uniform course of decisions under those Statutes has been, that a devise of the proceeds of land was an evasion of the Statute, and equally void as a direct devise of the land itself. *Attorney-General vs. Weymouth, Ambler,* 23; 2 *Ves., Jr.,* 238, 241; *State vs. Wilbank,* 2 *Harrington, (Del.,)* 22; *Curtis vs. Hutton,* 14 *Ves.,* 540; *Church Society vs. Coles,* 5 *De G., M. & G.,* 324; *Roper vs. Ratcliffe,* 9 *Mod., marg. p.,* 184; *Trippe vs. Frazier,* 4 *H. & J.,* 446.

If this principle applies, then so much of the bequests to the foreign corporations as is charged on realty is void, for the reasons given in the case of domestic corporations, *ante.*

IV. The void bequests vest in the heir and next of kin. The rule is that if any portion of a residuary bequest fails, it does not go to increase the portions of the remaining residuary legatees, but to the next of kin; in other words, there is no residue of a residue. 1 *Jarman on Wills,* 728; *Skrymster vs. Northcote,* 1 *Swanston,* 570; *Sykes vs. Sykes, L. J.,* 3 *Ch. App.,* 301; *Floyd vs. Barker,* 1 *Paige,* 480; *Atty-Genl. vs. Davies,* 9 *Ves.,* 535; *Barnum vs. Barnum,* 42 *Md.,* 311, *(bottom of page;) Beckman vs. Bonsor,* 23 *N. Y.,* 312.

The argument on the other side is suicidal. The adverse parties can claim the bequests which fail, only in their capacity as *residuary legatees.* As specific or general pecuniary legatees, they have no standing for such a purpose; lapsed devises and bequests go to heirs and residuary legatees only. Now, *the same clause that gives them this character, makes the controverted bequests also residuary;* either all are residuary legatees or none are. If *none* are residuary legatees, the testatrix died intestate as to the void bequests; if *all* are residuary legatees, then the rule above quoted applies. It is immaterial, therefore, which is construed as the residuary

clause of the will, the one disposing of " all the rest and residue " of her estate, or the one providing for the case of a surplus; in either case, the void bequests go to the next of kin.

*Richard J. Gittings,* and *Arthur W. Machen,* for The Home of the Aged of the Methodist Episcopal Church of Baltimore City.

1. This legatee is not within any of the classes mentioned in the 38th Article of the Bill of Rights, and therefore no sanction of the Legislature to this bequest was required. Had such sanction been necessary, the Act of 1878, ch. 56, was sufficient for the purpose.

The difficulty suggested that a subsequent legislative assent would operate to divest an estate previously vested in the heir disappears, when it is considered, first, that the supposed vesting in the heir is but an assumption, whatever interest that descends upon him being qualified by the possibility that operation may be given to the devise by the subsequent legislative sanction; and secondly, that the whole subject of the transmission of property upon death is under the control of the legislative power of the State, which, therefore, can always regulate both the course of descent and the power of devising.

Certainly, there is no intrinsic difficulty in the notion of a conditional gift, to take effect at a future time, and upon the happening of a contingency.

2. The estate being insufficient to pay the legacies in full, the void bequests must first go to make up the full amount given to the other legatees, before the next of kin can claim. A void legacy sinks into the *residuum,* but no rule is better established than that " a residuary legatee has no right to call upon particular general legatees to abate; the whole personal estate not specifically bequeathed, must be exhausted, before those legatees can be obliged to contribute anything out of their bequests." 2 *Williams on Ex'rs, Part 3, Bk. 3, ch. 4, sec. 2.*

*A fortiori,* there can be no abatement in favor of the next of kin, or heir, claiming in default of a residuary gift.

*Wm. F. Frick,* and *R. W. Baldwin,* for the other corporations.

1. The testatrix directed her executor to sell all of her estate, and out of the proceeds to pay the legacies. In a subsequent clause, she speaks of the proceeds of her property, when sold and *converted* into *money.* This must be construed as a complete conversion into personalty. *Thomas vs. Moore,* 1 *Md. Ch.,* 298 ; *Carr vs. Ireland,* 4 *Md. Ch.,* 251; *Hurst vs. Fisher,* 1 *H. & G.,* 88 ; *Leadenham vs. Nicholson,* 1 *H. & G.,* 267 ; *Smith vs. Hooper,* 23 *Md.,* 273 ; *Ould vs. Washington Hospital,* 5 *Otto,* 591.

2. These gifts all received the subsequent legislative sanction required by the Bill of Rights, by ch. 56, Act of 1878, which Act is sufficient for the purpose.

Art. 38 in the present Bill of Rights is the same as Art. 34 in the Constitution of 1864, and as the provision in the Constitution of 1851, except that the words " without the leave of the Legislature " in the latter, were changed so as to read " without the prior or subsequent sanction of the Legislature." This change was made to remove any doubt of the power of the Legislature to sanction a bequest after the death of the testator. 1 *vol. Deb. Con. Conv.,* 1864, *p.* 385–6.

This sanction, therefore, may be given before or after the death of the testator ; before, by giving to a corporation, which would otherwise be unable to take under the provisions of the Bill of Rights, *power to take and hold property up to a certain limit by a provision of its charter ; Murphy vs. Dallam,* 1 *Bland,* 591 ; *Brown vs. Thompkins,* 49 *Md.,* 431 ; or the sanction may be subsequent, by a special Act.

All of these corporations had the *prior* sanction, by the provisions of their charters, both those under the gen-

384 MARYLAND REPORTS.

Church Extension of the M. E. Church, *et al. vs.* Smith, &c.

eral and those under special Acts, which authorized them to take and hold property, by devise, bequest or otherwise, up to a certain limit ; it being admitted that the addition of these bequests would in no case make their holding exceed that limit.

In support of the position that the Act of 1878, ch. 56, is a sufficient *subsequent* sanction we refer to the contemporaneous and continued construction thereof, as shown by numerous Acts of Assembly, from the first session after the Constitution of 1864 to the present time.

" Power exercised by the Legislature from the adoption of the Constitution to the present, ought to be conclusive evidence of its possession of that power." *Harrison vs. State*, 22 *Md.*, 468 ; *W. Co. vs. B. & O. R. R.*, 12 *G. & J.*, 438 ; *Fletcher vs. Peck*, 6 *Cranch*, 128 ; *Mayor, &c. of Baltimore vs. Board of Police*, 15 *Md.*, 453 ; *Davis vs. Helbig*, 27 *Md.*, 452 ; *Groff vs. Mayor, &c.*, 44 *Md.*, 67.

3. Such legislation does not interfere with vested rights ; if it does, still the Constitution gices the Legislature that power. *Baugher vs. Nelson*, 9 *Gill*, 306 ; *Watson vs. Mercer*, 8 *Peters*, 110 ; *Charles River Bridge vs. Warren Bridge*, 11 *Peters*, 540.

In this case, the legal title to the estate, between the death of the testator and the action of the Legislature, remained in the executor.    The devise to him is good, and the converted fund is in his hands as trustee, to pay over to the legatees, if the Legislature gives its sanction ; if it refuses, then to the next of kin.    If the Legislature, before the time for distribution arrives, or at its first session after the death (as happened in this case,) legalizes the bequest, *no vested right* in the next of kin is interfered with.

But assuming that the estate vested in the next of kin ; it did so *sub modo* only, subject to divestiture.    For, to say a legacy is void, unless sanctioned by the Legislature, is to say it is good when so sanctioned.    See *Inglis vs. Trustees*, 3 *Peters*, 144.

The gifts to the foreign corporations are good *in toto,* because a bequest of personal property requires no sanction, *Vansant vs. Roberts,* 3 *Md.,* 128; *Brown vs. Thompkins,* 49 *Md.,* 423; and this estate was absolutely converted into personalty, or, in any event, was to be paid out of a blended fund. *Given vs. Hilton,* 5 *Otto,* 596.

[Argument as to whether the Preachers' Aid Society is a religious corporation within the meaning of the Bill of Rights, is omitted, because that question was not passed upon by the Court; and upon the bequest to the Rev. Leonard M. Gardner, because its validity was conceded by the counsel for next of kin. REP.]

4. The bequest to the Church Extension Society of the M. E. Church, of Pennsylvania, is valid. This legacy is given directly to the corporation, and it is so given to be added to a fund the creation and use of which is one of the objects of the corporation. It is not *a bequest in trust for an object outside of the corporation,* but it is *to the corporation itself for one of its special objects.* Now, a bequest to an individual or to a corporation for his or its own uses, does not create a trust, even if those uses be specifically defined. A bequest of $1000 to A. to buy a house with, does not impose a trust on A. to buy a house. So, a bequest to a corporation entitled to take such bequest for its corporate uses, to be devoted by it to some one or more of its corporate uses, is clearly good. A corporation takes *all* its property *in trust* to devote it to objects defined in its charter. *Lewin on Trusts,* 31.

One of the objects of this corporation, is the creation of a Perpetual Loan Fund. To say it cannot take this legacy, because it may not use it for the purpose indicated by the testatrix, is to say it cannot take a bequest given for its general uses, because it may not be used for those general uses, but for some foreign use.

5. The same argument applies to the bequest to the Ladies' Mite Society. The gift is to the Church, as a cor-

poration, to be used for one of the objects of that corporation.

6. The estate being insolvent, the void bequests do not go to the next of kin, but must contribute to make up the full amount of the valid legacies. 2 *Red. on Wills,* 548, *sec.* 809 ; 1 *Roper on Legacies,* 413 ; *Currie vs. Pye,* 17 *Ves.,* 462.

After the payment of the valid legacies in full, so much of the fund, if any, of the void legacies, as is not required to make up the deficiency, constitutes the *residuum* of the estate. 2 *Red. on Wills,* 442, *secs.* 4 *and* 5 ; *Ib.,* 446, *sec.* 8 ; *Cox vs. Harris,* 17 *Md.,* 23–31; *Deford vs. Deford,* 36 *Md.,* 168.

The true residuary clause of the will is the one where she disposes of a possible overplus of her estate, after satisfying the legacies in full, and also provides for the case of a deficiency.

BARTOL, C. J., delivered the opinion of the Court.

These are cross-appeals taken from a decree of the Circuit Court of Baltimore City, declaring invalid, several bequests made in the last will and codicils of *Susie Duke Callow,* deceased, and establishing as valid certain other bequests therein contained.

The will was dated on the 2nd day of March 1870, and the several codicils thereto were dated respectively April 25th 1870, July 20th 1871, and November 30th 1875. The testatrix died in June 1876.

The will and codicils were duly executed and were admitted to probate on the 13th day of July 1876, and letters testamentary were granted to Samuel G. Taylor, the executor therein named. Soon after the lapse of thirteen months thereafter, the original bill of complaint was filed by *Margaret Ann Smith* by her next friend, heir-at-law and next of kin of the testatrix, alleging that certain bequests in the will and codicils were invalid. After-

wards by agreement the original bill was withdrawn, and the second amended bill of complaint, was substituted therefor.

All the parties in interest claiming as legatees were made parties to the cause. Most of the material facts were established by the written agreement of the solicitors filed in the case; among other things, the correct names of the several corporations mentioned and referred to in the will, were agreed to, and admitted to be the same corporations intended by the testatrix, so that no question of misnomer arises in the case. The several Acts and certificates of incorporation were also admitted as if they were duly proved, and it was agreed that the same might be read at the hearing.

The several bequests in the will are therein numbered from one to fourteen; of these Numbers *nine, ten, eleven, twelve* and *thirteen* are admitted to be valid, and are not questioned or impeached. The others, viz., Numbers *one, two, three, four, five, six, seven* and *fourteen* are alleged in the bill of complaint to be invalid, and also the two bequests of $1000 each, in the codicil dated 30th day of November 1875, given in lieu of the $2000 which had been bequeathed to Mrs. Matilda Christopher by the *eighth* item of the will, and which had been revoked in consequence of her death.

Of the several bequests thus impeached, the Circuit Court decided that Numbers one, two, three and seven were valid, and from its decree in this respect the complainant has appealed; and as to Numbers four, five, six and fourteen, and those contained in the codicil of November 30th 1875, the Circuit Court decided that they were invalid, and from this part of the decree the several legatees therein mentioned have appealed; and they have also appealed from the decision of the Circuit Court as to the proper disposition to be made of the fund in cases where the bequests fail to take effect by reason of their invalidity. This last

question will claim our consideration after we shall have disposed of the several disputed items of the will.

The will first disposes of certain articles of household furniture, clothing and personal ornaments according to the directions contained in a schedule thereto annexed, afterwards somewhat enlarged by a codicil, dated July 20th 1871. The testatrix then devises and bequeaths all the rest and residue of her estate, real, personal and mixed, to Samuel G. Taylor, the executor, in trust that he will sell the same, and after the payment of debts and funeral expenses out of the proceeds, pay the legacies following, viz., Then follow the names of the several legatees, and the amounts of the several pecuniary legacies to them, numbered from one to fourteen. The will then provides as follows: " Should the proceeds of said property when sold and converted into money, be more than sufficient to pay the aforegoing legacies in full, it is my will, and I do hereby order and direct my said executor to distribute the surplus remaining in his hands, amongst said legatees *pro rata.* And in case the proceeds should prove insufficient to pay said legacies, it is my will, and I do order and direct the same ratably."

By the last clause of the will, the executor and trustee is authorized and empowered to execute deeds, conveyances, &c., of the property directed to be sold.

The property has been sold, and the proceeds have proved insufficient to pay the pecuniary legacies, if these were all legal and valid. So that there is no surplus as contemplated by the will in one of its aspects. The pecuniary legacies amount to $41,500, and it appears from the record that the money in the hands of the executor applicable to their payment is $27,792.23, of which the sum of $2025 was the proceeds of the sale of real estate.

1. The first bequest is $4500 to "The Missionary Society of the Methodist Episcopal Church, incorporated by the Legislature of the State of New York."

The existence of the corporation is admitted, and its charter is produced and agreed to be read as if duly proved.

It is objected to this bequest, *first*, that the corporation has no power under its charter, to take personal property by bequest, and *secondly*, that being a foreign corporation, it is incapable of taking lands in Maryland, or any interest in lands in this State, and consequently in so far as the legacy is derived or payable from the sale of land, it is void.

*First.* The *sixth section* of the charter, after declaring that the corporation is capable of receiving, taking and holding any real estate by virtue of any devise, subject to certain limitations therein mentioned, provides " that the said corporation shall be also competent to act as trustee in respect to any devise or bequest pertaining to the objects of said corporation, and devises and bequests of real or personal property may be made directly to said corporation, or in trust for any of the purposes comprehended in the general purposes of said society; and such trusts may continue for such time as may be necessary to accomplish the purposes for which they may be created."

There can be no doubt of the power of the corporation, under this section, to take the pecuniary bequest under Mrs. Callow's will. Being a foreign corporation, the provisions of the 38*th section* of our Bill of Rights have no application to it, and impose no restraint upon the power of the testatrix to make to it a valid bequest of personal property, as was decided in *Vansant vs. Roberts*, 3 *Md.*, 119, 128, 129, and *Brown vs. Thompkins*, 49 *Md.*, 431.

*Second.* As to the objection that a part of the fund in the hands of the executor, consists of the proceeds arising from the sale of real estate. We are of opinion that the effect and operation of the will, is to convert the whole estate into personalty, and to appropriate the whole

blended fund, called "*money*" in the will, to the purpose of paying the debts, funeral expenses, and pecuniary legacies. *Hurtt vs. Fisher,* 1 *H. & G.,* 88; *Leadenham vs. Nicholson,* 1 *H. & G.,* 267; *Thomas vs. Moore,* 1 *Md. Ch.,* 298; *Carr vs. Ireland.* 4 *Md. Ch.,* 251; *Smithers vs. Hooper,* 23 *Md.,* 273; *Orrick's Case,* 49 *Md.,* 104, 105; *Given vs. Hilton,* 95 *U. S.,* 591; *Singleton vs. Tomlinson, L. R.,* 3 *Appeal Cases,* 404.

The will before us, like that in the case last cited, directs "that the whole estate, be turned into money, so as to be converted out and out, not for a special purpose only, but for the general purposes of the will;" and after satisfying the several pecuniary legacies named in the will, the surplus, if any, is disposed of in favor of the same legatees, no part of it could go to the heir as real estate.

While it may be conceded that a devise of lands in Maryland to a foreign religious corporation would be held invalid as against the policy of the law, and contrary to the spirit of the 38th Article of the Declaration of Rights, which is analogous to the British Mortmain Acts, yet it by no means follows, that where, as in this case, the will directs that the whole estate, real and personal, shall be converted into money, and constitute a blended fund for the purpose of paying debts and legacies, and the whole surplus is disposed of as money; and a pecuniary legacy is given to a foreign religious corporation, any objection can be made to the validity of the legacy because a portion of the fund out of which it is directed to be paid, is derived from the sale of real estate.

In this case, there is a clear and manifest intent to disinherit the heir.—The whole fund must be considered and treated as money—and the bequest to the foreign religious corporation, not being affected by the provision of the Declaration of Rights—was rightly held by the Circuit Court to be a valid bequest.

The bequest in the *seventh item* of the will, is in these words, " To my highly esteemed friend and pastor, the Reverend Leonard M. Gardner, as a token of my respect and gratitude, the sum of *five thousand dollars.*"

We concur in the opinion of the Circuit Court, that this is a perfectly valid bequest. It is given to Mr. Gardner in his personal and individual character, for his own use absolutely, not in his character as a minister or preacher. It does not, therefore, come within the terms of Art. 38, of the Declaration of Rights. The legatee is designated by the testatrix as her "esteemed friend and pastor." These words are descriptive of the person intended; the gift is to the man, and not to the preacher "as such," within the meaning of Art. 38, which cannot be construed as disqualifying him, because of his vocation, from receiving a legacy, or acquiring property without the sanction of the Legislature.

The *second clause* of the will gives to "the Methodist Preachers' Aid Society of Baltimore," $4500. The *third,* to "the Home of the Aged of the Methodist Episcopal Church of Baltimore City," $5000. The *fifth,* to "the Trustees of the Strawbridge Methodist Episcopal Church, situated on the corner of Garden and Biddle streets," $2000. The *sixth,* to "the Trustees of the United Presbyterian Church, situated on the corner of Madison avenue and Biddle streets," $1000. And the codicil of November 30th 1875, gives to "the Baltimore City Missionary and Church Extension Society of the Methodist Episcopal Church, incorporated under the General Laws of the State of Maryland," $1000.

These five legacies will all be considered together, the several legatees are domestic corporations, the two last named were incorporated under the general laws of the State, and the others were incorporated by special Acts of Assembly, each of them is entitled to hold property to a limited amount, and it is admitted that if the several

pecuniary legacies given them by the will be held valid, the funds thus accruing to them will not be in excess of the limitations fixed by their charters. It is conceded that the three last named are religious corporations within the meaning of the 38th Article of the Declaration of Rights. The two first named, viz., "The Methodist Preachers' Aid Society," and "The Home of the Aged of the Methodist Episcopal Church," it is contended, are eleemosynary associations, not religious or sectarian in their character, and consequently not within the terms of the 38th Article; and so the Circuit Court decided, and for that reason sustained as valid the legacies given to them. In the view we take of the case, it seems to us to be unnecessary to pass upon that question. Assuming them to be religious corporations within the meaning of the 38th Article, and subject to the disabilities provided by that Article, without however so deciding, we shall consider all the five corporations named as standing in the same category, and incapable of taking the bequests without the sanction of the Legislature. And this brings us to the consideration of the question whether such sanction has been validly and effectually given. We quite agree with the complainant's solicitors in the position that the power to take and hold property to a specified amount expressed in the charters, whether the same are created by express legislative enactment, or formed under the general corporation laws, cannot be construed as a sanction by the Legislature within the intent and meaning of the 38th Article, conferring upon them the capacity to take under a devise or bequest. Such a construction would render nugatory the important and carefully considered provisions of the 38th Article. In our opinion, the sanction of the Legislature contemplated and required by that Article must be expressly given to each particular devise or bequest, in order to render it valid. Such has been the uniform and invariable construction given to

that Article, or to similar provisions in the organic law, as is shown by the course of legislation for many years; and the question was so decided in *Orrick's Case*, 49 *Md.*, 105. This point does not distinctly appear in the opinion delivered by this Court, but by reference to the record in *Orrick's Case*, it will appear that "the Lutheran Congregation of Boonsborough," one of the legatees in Stonebraker's will, was duly incorporated, and both by the Acts of 1802 ch. 110, and 1815 ch. 222, and by the provisions in its charter, was authorized to receive and hold property to a limited amount, and in its answer these provisions of law were relied on to show a legislative sanction of the bequest, yet it was decided that the bequest was void, because of the incapacity of the corporation to take it, there being in that case no express sanction of the bequest by the Legislature.

In this case, the Legislature has expressly sanctioned the several bequests now under consideration by the Act of 1878, *ch.* 58, and the question arises as to the effect of that Act.

A very able and ingenious argument has been made by the complainant's solicitors for the purpose of showing that the Act of 1878, cannot operate to make these bequests valid, for the reason that they are given in the will, by words in the present tense, and according to its terms, must vest or take effect, if at all, *eo instanti*, upon the death of the testatrix, when the legatees were incapable to take under the 38th sec. of the Declaration of Rights, consequently the right to the property or fund vested in the heir or next of kin, and could not be divested by a subsequent Act of Assembly.

In support of this position, we have been referred, among others, to *Baptist Association vs. Hart's Ex'r*, 4 *Wheaton*, 27, and *Inglis vs. Trustees, &c.*, 3 *Peters*, 99. In each of those cases, the bequests were made to unincorporated associations. In the former, they were held to be

void; in the latter, they were declared to be valid, because by the terms of the will, as construed by a majority of the Court, the gifts were to take effect *in futuro*, upon the contingency of the association being legally incorporated. The bequests were supported as executory devises,—whereas, under the will of Mrs. Callow, these bequests being made in the present tense, and not upon the contingency of the legislative sanction being thereafter given, within the period prescribed by the rules of law, relating to perpetuities, cannot take effect according to the terms of the will, and therefore, it is argued they must be declared invalid.

We have carefully considered this question, and are of opinion, the doctrines asserted by the Supreme Court, in the cases cited, are inapplicable.—Here the legatees are duly incorporated, and capable of taking the bequests, except for the disability imposed upon them by the 38*th section;* but that section provides that the bequests shall not be void, if they receive the *prior* or *subsequent sanction of the Legislature.* Now, this provision of the organic law, must be presumed to have been known to the testatrix, and her several bequests, which she knew would be invalid, unless sanctioned by the Legislature, must be construed as having been made subject to the will of the Legislature, upon whom the Constitution confers the power of granting or refusing its sanction. By the terms of the Article, this sanction may be given *after the death of the testatrix.* If it operates to divest the heir or next of kin of property or rights which have temporarily devolved upon them, this results from the provisions of the organic law, which has clothed the Legislature with the power to sanction the legacies; when sanctioned, the legislative act relates back to the death of the testatrix, and the legacies take effect from that time.

In such case no rights vested in the heir or next of kin, which were not subject to be divested, by the Act of

the Legislature, sanctioning the legacies. Such we under-stand to be the true construction and effect of the 38th Article.

This question has been lately decided in *England, Ex'r vs. Vestry of Prince George's Parish.* 53 *Md.*, 466. In that case the will of Ursula Wilcoxen dated August 19th 1876, bequeathed $500 to the Vestry of Prince George's Parish. It was contended that this bequest was void under the 38*th Article.*

The Legislature, at the session of 1878, the first which occurred after the probate of the will, sanctioned the bequest (Act of 1878, ch. 43.) This Court held the Act valid and effectual to entitle the Vestry to the legacy.

It was then said " No *laches* can be attributed to the Vestry. It must be assumed that the framers of the Constitution intended that a reasonable time should be allowed for obtaining the assent of the Legislature to such bequests, or otherwise many of them would fail by reason of the legatees having had no opportunity to apply for such assent, and the Legislature no opportunity to grant it, by reason of its not being in session more than once in two years, unless called together in extra session by the Governor. The assent of the Legislature to this bequest was given at its first session after the death of the testatrix, and we are of opinion that it was in time to impose upon her executor the obligation to pay it."

In that case, as in this, the bequest was made in the present tense. No argument has been addressed to us, to raise a doubt as to the correctness of that decision, or to induce us to depart from it. In this case, the legisla-tive sanction was given at the first session after the death of the testatrix. There were no *laches* or unreasonable delay, on the part of the legatees, and it follows there-fore, that the several legacies named in the second, third, fifth and sixth items of the will, and the bequest to the " Baltimore City Missionary and Church Extension Society

of the Methodist Episcopal Church," in the codicil of November 30th 1875, are legal and valid bequests.

We have next to consider the bequests in the *fourth* and *fourteenth items* of the will, and the bequest of $1000, given by the codicil of November 30th 1875, to "the trustees of the Strawbridge Methodist Episcopal Church, for the benefit of the Ladies' Mite Society of said Church, situated on the corner of Garden and Biddle street in the City of Baltimore." These were decided by the Circuit Court to be invalid, because of the vagueness and uncertainty in the objects of the bequest, and indefiniteness in ascertaining the beneficiaries for whom the gift was intended.

It is obvious that the bequest of $500 to the executor, in the fourteenth clause, to be invested, and the interest thereon to be applied by him to the keeping in order of the lot and vault of testatrix in Greenmount Cemetery, is void, as attempting to create a trust which cannot be enforced. This is conceded, and no appeal has been taken from the decree of the Circuit Court declaring it invalid.

The fourth clause of the will is as follows :

" To the Church Extension of the Methodist Episcopal Church, incorporated by the Legislature of Pennsylvania, the sum of ten thousand dollars, to be used as part of the ' Perpetual Loan Fund ' of said Society, and to bear the name of the Durham Loan Fund."

The legatee is duly incorporated, and capable under its charter, of taking the bequest for the general purposes of the association ; but the testatrix has chosen to declare the particular use and purpose to which the fund shall be applied, and the question is, whether the use so declared is so indefinite as to render the legacy void.

It appears by the agreed statement of facts " that by a rule adopted by the corporation before the making of testatrix's will, and which is still in force, any one donating $5000 or more *to the loan fund,* may designate the name

by which said contribution shall be known ; the said loan fund is set apart to be loaned to necessitous Churches of the Methodist Episcopal Church, erected from time to time within the limits of the United States and its territories, and the beneficiaries and recipients thereof, are such of said Churches, as the committee in charge of said fund, for the time being, may in their discretion select."

It thus appears that the legacy is not given to the corporation for its own use; it cannot, according to the terms of the will, be used for its general purposes ; but the testatrix by directing that it shall be held as a part of the Loan Fund, has constituted the corporation a trustee, charged with the duty of employing the fund only for the use and benefit of necessitous Methodist Churches in the United States. These are the real beneficiaries for whose use the legacy is given. It seems to us very clear that such a trust is so indefinite that it could not be enforced.

According to the uniform course of decisions in this State, a trust cannot be upheld unless it be of such a nature that the *cestuis que trust* are defined, and capable of enforcing its execution by proceedings in a Court of chancery. *Dashiell vs. Attorney-General,* 5 *H. & J.,* 392 ; *Same vs. Same,* 6 *H. & J.,* 1 ; *Wilderman vs. M. & C. C. of Balt.,* 8 *Md.,* 551, 555 ; *Needles vs. Martin,* 33 *Md.,* 609 ; *Meade vs. Beale, Taney's C. C. Decisions,* 389.

Here the selection of the necessitous Churches for whose benefit the bequest is given, depends exclusively upon the will of the committee appointed by the corporation; if the committee should at any time fail to exercise its discretion, or the corporation should fail to appoint a committee for the care and appropriation of the Loan Fund, it would be possible for the corporation to appropriate to other purposes the entire fund ; and there are no parties who could maintain a suit to prevent such misappropriation or enforce the execution of the trust, declared in the will.

In saying this, we do not mean to intimate that such a breach of trust would be likely to occur ; but in determining the validity of the bequest, the Court can look only at the legal capacity of the *cestuis que trust* to compel its execution, and where this does not exist, by reason of the vague and indefinite character of the trust, and of its beneficiaries, the Court has no alternative except to declare it void.

These observations apply alike to the bequest of $1000, given by the codicil to the trustees of the Strawbridge Church, for the benefit of the *Mite Society.*

This last is admitted to be a voluntary unincorporated institution, and it is therefore incapable of taking property by bequest, or of enforcing the trust declared by the will for its benefit; for this reason the legacy is clearly void.

The conclusion we have reached, as before expressed, is that three of the pecuniary legacies are void, viz., *No.* 4, *No.* 14, and the legacy of $1000 bequeathed by the codicil for the benefit of the "Mite Society," these amount in the aggregate to $11,500, and the question arises as to the proper disposition of this fund. On the part of the complainant, it is contended that being part of the residuary bequest, it goes to the next of kin, so far as it consists of personalty, and so far as it arises from the proceeds of the sale of realty, it devolves upon the heir.

In this case, as we have before said, the intention of the testatrix, and the effects of the provisions of her will, were to convert the whole estate into money, consequently the fund in the hands of the executor and trustee, must be treated as personalty. In addition to the cases before cited, we refer to *Smithers vs. Hooper,* 23 *Md.,* 285. The rule is well settled, that where a bequest of personal property is void, the property falls into the residue, and passes to the residuary legatee. *Deford vs. Deford,* 36 *Md.,* 168. It is equally well settled, that " where a portion of the

residuary bequest fails to become operative, at the death of the testator, in the manner provided, the portion thus failing, will not go to increase the other portions of the *residuum,* as a residue of a residue." 2 *Redfield on Wills,* 119, *sec.* 8, (3rd *Am. Ed.*)

The portion of the residuary bequest thus failing, passes to the next of kin, as property not disposed of by the will. *Floyd vs. Barker, et al.,* 1 *Paige,* 480 ; *Beekman vs. Bonsor,* 23 *N. Y.,* 299, 312.

The claim of the complainant to the fund, in cases where the legacies are declared void, is based on the assertion that such legacies constitute a part of the residuary bequests. In our judgment, this is a misconstruction of the will.

By recurring to its terms which have been before stated, we think the clear intent of the testatrix was to give to the legatees therein named, the several pecuniary legacies enumerated in the will ; in case the estate be not sufficient to pay them in full, she directs that they shall abate in equal proportions ; and in case there should be a surplus, she gives the surplus to the same legatees ratably.

This last provision must be construed as the real residuary clause. As it has turned out that there is no such surplus, it is unnecessary to pass upon the rights which the next of kin might assert to the portions of the surplus accruing to the legatees, whose legacies are void. It is very clear, that in the present case, where the fund is not sufficient to pay the valid pecuniary legacies these cannot be required to abate by reason of the invalidity of certain other pecuniary legacies given by the will.

" The residuary legatee has no right to call upon particular general legatees to abate. The whole personal estate, not specifically bequeathed, must be exhausted, before those legatees can be obliged to contribute anything out of their bequests." 2 *Wms. Ex'rs,* 1463, (*Perkins' 6th Am. Ed.*)

According to our construction of the will, the several pecuniary bequests are not given as parts of the residue, but are general legacies, which the testatrix intended should be paid, so far as her property might prove sufficient for that purpose. It cannot be sucessfully claimed that such of them as are valid, shall abate, or be diminished in favor of the next of kin, on account of certain other legacies proving invalid.

The decree of the Circuit Court will be reversed, and the cause remanded for further proceedings.

We shall direct that the costs in this Court, and in the Court below, be paid out of the fund in the hands of the executor.

*Reversed and remanded.*

(Decided 28th June, 1881.)