## GIVEN *v.* HILTON.

1. Where the intent of a testator to make a complete disposition of all his property is manifest throughout his will, its provisions should be so construed, if they reasonably may, as to carry that intent into effect.

2. While an apparent general intent cannot control his particular directions plainly to the contrary, or enlarge dispositions beyond their legitimate meaning, it is of weight in determining what he intended by particular devises or bequests that may admit of an enlarged or a limited construction.

3. The rule in the construction of wills, where certain things are enumerated, that a more general description, which is coupled with the enumeration, is commonly understood to cover only things *ejusdem generis* with the particular things mentioned, rests on a mere presumption, easily rebutted by any thing which shows that the larger subject was in fact in the testator's view.

4. The will in this case construed, and. *held,* 1. That the testator intended to dispose of his entire estate, and not to die intestate as to any portion of it. 2. That his direction to his executors to sell all his estate not otherwise devised and bequeathed was intended to secure a complete conversion, to all intents, of his entire property into personal estate. 3. That, with the exception of the lot devised, his entire estate, both real and personal, after the payment of his debts and of the legacies prior to that given to the residuary legatee, passed to the latter.

APPEAL from the Supreme Court of the District of Columbia.

The bill in this case was filed by John Emory Hilton and certain other heirs-at-law and next of kin of John P. Hilton,

against John T. Given and Carberry S. Hilton, his executors and others, to obtain judicial construction of his last will and testament. It prayed for an injunction restraining the executors from selling any portion of the real estate until they should first have applied the personal estate to the payment of debts and the legacies specified in the will, and, in the event of any deficiency, then to sell no greater portion of such real estate than would be sufficient to discharge such debts and legacies.

The court decreed that the debts due by the deceased were to be first paid, then the legacies, and both from the personal estate, if that be sufficient; but if not, then that the real estate be resorted to, but only to discharge any deficiency, and that the residue of said real estate be equally divided among the heirs.

From this construction of the will the defendants appealed to this court.

This will, which was duly attested and admitted to probate, is as follows:—

"In the name of God, amen. I, John P. Hilton, of Washington City, in the District of Columbia, . . . do . . . make and publish this my last will and testament, in manner and form following, that is to say: . . .

"After my debts and funeral charges are paid, my worldly estate, with which it hath pleased God to intrust me with, I devise and bequeath as follows:—

"*Item.* As soon after my decease as possible, I direct that my debts and funeral expenses be paid out of any portion of my estate which may first come into the hands of my executors hereinafter named.

"*Item.* Secondly, I direct that all of my estate, except such as is hereinafter otherwise devised and bequeathed, be sold by my executors at as early a day as practicable, upon such terms and conditions as may seem best in their judgment for the best interest of all herein concerned, and that the proceeds arising therefrom shall be divided in the following manner and proportions as they are first herein named, written, and stated, as far as the amount realized from the sale of my said estate will allow, viz.:—

"*Item.* I give and devise unto my kind and obedient son, Carberry S. Hilton, and my grandchildren, John Perry Hilton and Harry Slicer Hilton, sons of Carberry S. Hilton, all that part of lot eight (8) of Davidson subdivision of square two hundred and

fifteen (215), fronting on 14th Street west, between L and M Streets north, with the improvements; that is to say, one-half of the said lot and improvements to the said Carberry S. Hilton, in fee-simple, and the remaining half as he may choose, to him the said Carberry S. Hilton, in trust for the sole use and benefit of his said children, John Perry Hilton and Harry Slicer Hilton, in fee-simple, to be equally divided between them.

[Here follows a number of pecuniary legacies.]

"*Item.* I give and bequeath unto my kind, affectionate son, Carberry S. Hilton, all the rest and residue of my estate of which I may die seised or possessed, which is not herein otherwise devised and bequeathed, such as moneys, bonds, stocks, judgments, notes, household furniture, and all personal effects of every description, and not herein otherwise disposed of, for his sole use and benefit and that of his children.

"*Item.* I direct that the rents accumulating from my estate, until such time as my executors shall have disposed of the same, shall be distributed as follows: After deducting all expenses for repairs, taxes, and insurance, the same shall be equally divided among my four children; namely, Carberry S. Hilton, Ann Terring Smith, John Emory Hilton, and Laura R. Morsell.

"And, lastly, I do hereby constitute and appoint my dear son, Carberry S. Hilton, and my esteemed friend, John T. Given, of Washington City, District of Columbia, to be sole executors of this my last will and testament, revoking and annulling all former wills by me heretofore made, ratifying and confirming this and none other to be my last will and testament, requesting that my son, Carberry S. Hilton, the first-named executor of this my will, that he make no charge for any service he may render in the execution thereof.

"In testimony whereof, I have hereunto set my hand and affixed my seal this nineteenth day of March, in the year of our Lord eighteen hundred and seventy-three.

[SEAL.]:                                    "JNO. P. HILTON."

*Mr. Richard T. Merrick* and *Mr. William F. Mattingly* for the appellants.

*Mr. Walter S. Cox* and *Mr. John J. Johnson, contra.*

MR. JUSTICE STRONG delivered the opinion of the court.

The ultimate question in this case is what passed under the residuary clause of the testator's will. It can be answered

intelligently only after a careful examination of all the provisions of the instrument, and an ascertainment therefrom of the testator's general scheme. That he intended to make a complete disposition of all his property, leaving none to pass under the intestate laws, is abundantly manifest. He commenced by declaring that, after his debts and funeral charges were paid, he devised and bequeathed the worldly estate with which it had pleased God to intrust him. Next followed a direction that these debts and expenses should be paid, as soon after his decease as possible, out of any portion of his estate that might first come into the hands of his executors. Then followed a direction that all his estate, not otherwise devised and bequeathed (all except a single lot of ground devised to a son), should be sold as soon as practicable, and that the proceeds thereof should be divided in a manner and in proportions described thereafter. Here the real estate and the personalty are commingled and treated as one fund. All is to be converted into money, and all is to be distributed; and, to guard against the least intestacy, and insure that all his estate should pass under his will, by a subsequent disposition he disposed of the rents that might accumulate from his estate, before the executors should sell it, by distributing them among his children. These dispositions are utterly inconsistent with an intention to leave any portion of his estate to descend under the intestate laws; and they accord with the general rule that no presumption of an intent to die intestate as to any part of his property is allowable when the words of a testator's will may fairly carry the whole. *Stehman and Others* v. *Stehman*, 1 Watts (Pa.), 466. The law prefers a construction which will prevent a partial intestacy to one that will permit it, if such a construction may reasonably be given, *Vernon* v. *Vernon et al.,* 53 N. Y. 351; and certainly when, as in this case, the intent to make a complete disposition of all the testator's property is manifest throughout his will, its provisions should be so construed, if they reasonably may be, as to carry into effect his general intent.

We do not mean to be understood as asserting that an apparent general intent to make by his will a complete disposition of all a testator's estate can control particular directions plainly

to. the contrary, or enlarge dispositions beyond their legitimate meaning. What we do assert is, such a general intent is of weight in determining what was intended by particular devises or bequests that may admit of enlarged or limited construc- tions.

. It has already been noticed, the testator in this case ordered that. all his estate, except a single lot, and confounding realty and personalty, should be sold by his executors as soon as prac- ticable. This sale he directed to be made upon such terms and conditions as might seem best in their judgment for the inter-. ests of all concerned in the will; and he directed the proceeds arising therefrom to be divided in the manner and proportions, " as first written, named, and stated " in the will, as far as the amount realized from the sale would allow. Then followed a devise of the excepted lot, and various pecuniary bequests, suc- ceeded by a residuary legacy to his son, given in the following words : " I give and bequeath unto my kind and affectionate son, Carberry S. Hilton, all the rest and residue of my estate, of which I may die seised or possessed, which is not herein otherwise devised and bequeathed, such as moneys, bonds, stocks, judgments, notes, household furniture, and all personal effects of every description, and not herein otherwise disposed of, for his sole use and benefit and that of his children."

If by this residuary clause the testator intended to give only. the residue of that which was personalty immediately preceding his death, then he died intestate as to all his real estate not needed for the payment of his debts and other legacies, and as to the surplus of the proceeds of its sale not necessary for those payments. Then there is a resulting interest in all his children as collectively heirs-at-law ; and, as that which was personalty at his death is, by admission, largely insufficient for the pay- ment of those debts and legacies, the residuary legatee takes nothing under the bequest to him, for the personal property is first to be applied to discharge the debts and legacies. But, on the other hand, if by the direction to sell all his estate the tes- tator intended its conversion into personalty out and out, or for all intents, and not merely for the payment of the legacies prior to the residuary gift, the residuary clause carried all that may remain after those legacies shall be paid.

It is a fundamental question, therefore, whether the testator's direction to his executors to sell "all his estate" worked an absolute conversion of his realty into personalty. It is undoubtedly established doctrine that when a will directs conversion of realty only for certain purposes, which are limited, for example, for the payment of particular legacies, and follows the direction by a bequest of the residue of personal estate, the conversion takes place only so far as the proceeds of the sale are needed to pay the legacies prior to the residuary one, and the gift of the personalty will not carry the produce of the sale of the lands in the absence of a contrary intent plainly manifested. The surplus or excess retains the quality of realty; and is transmitted either by a devise of the realty, if there be one, or descends under the intestate laws. Hence it is often a question, and frequently a difficult one, whether the direction to sell was for a limited purpose, or for all purposes, and, consequently, whether the testator's intent was to impress upon all the proceeds of the sale the quality of personalty. There are certain things which are considered indicative of an intent to cause a complete conversion. It has been held that a general direction to sell and apply the proceeds indiscriminately to the payment of debts and legacies operates as a conversion out and out. Roper on Legacies, 341, 342, *et seq.; King v. Woodhull,* 3 Edw. (N. Y.) 82; *Durour v. Motteux,* 1 Ves. 320.

Blending the proceeds of realty and personalty in one fund for the payment of debts and legacies is generally regarded evidence of an intention to give to the proceeds of a sale ordered the character of personalty throughout, though not a conclusive indication in all cases. These indications exist in the will before us, and, were it necessary, they might be called in aid of its construction; but, after all, little assistance is derived from general rules in the construction of a will. The intent of a testator is to be sought in the instrument itself. In making it he does not often have in mind any particular rules of construction applied to other wills. He uses those expressions which he supposes convey his own thought and wishes.

Turning, then, to the will before us, the first thing noticeable is that the direction to sell was positive, and that it comprehended all the estate. The testator must have known that

his personal property was largely insufficient to pay his debts, funeral expenses, and the pecuniary legacies he proposed to give. Yet his order was, not to sell so much of his real estate as might be necessary for satisfying debts and certain legacies, not that what should prove lacking of personalty should be supplied from sales of realty, but all was directed to be sold, whether necessary for the payment of legacies or not; and in the direction he recognized the interest of the residuary legatee as fully as he did the interests of any other legatee therein. The executors were required to sell on such terms and conditions as, in their judgment, might seem best for the interests of all concerned in the will. The residuary legatee was one of those concerned. Why consult his interest, if, as a beneficiary under the will, he had no concern in the sale, if by virtue of the legacy to him he was to have no portion of the proceeds of the sale, and if what remained after payment of the legacies prior to his was intended to continue realty, and descend under the intestate laws?

The will further directed that the proceeds of the sale, i. e. the whole proceeds, should be divided in the manner and proportions first in the will named, written, and stated, as far as the amount realized would allow. It is not quite clear what was meant by this direction: but it rather seems the intent was, that, if the sum for which the property might be sold should prove insufficient to pay all the legacies in full, they should be paid in the order named; that is, that the legatee first named should be first paid, and so on, in the order in which the different beneficiaries were mentioned, down to the residuary legatee. If this is not so, the word " first " can have no significance; and then the testator intended that legacies to his children and grandchildren should abate ratably with his gifts to strangers: but, however this may be, it was a fund arising from the sale of the testator's whole estate that was to be divided among legatees; and the residuary bequest to the son, Carberry S. Hilton, was as truly a legacy as any one of the gifts that preceded it. We can discover nothing, therefore, in this clause of the will that indicates an intent to effect only a partial conversion, or merely a conversion for the payment of those legacies which preceded the residuary bequest. On the contrary, the more reasonable

and the true interpretation, we think, is that the testator meant to direct a complete conversion, to all intents, of his entire property into personal estate. If so, the residuary bequest, even if it was only a legacy of his personal estate, carried to the legatee not only that which was personalty at his death, but that which by the conversion he ordered became personalty.

But it is not to be admitted as certain that the subject of the residuary bequest was personal property alone. Certainly the bequest is not an ordinary gift of the residue of personalty. Its phraseology is very peculiar. Were it not for the enumeration of " moneys, stocks, judgments, notes, household furniture, and all personal effects of every description " (most of which, if not all, may have been the product of the sales of the real estate ordered to be sold), the residuary clause, beyond doubt, would be broad enough to carry real estate, as well as all personalty. It is doubtless true that in the construction of wills, as well as of statutes, where certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly understood to cover only things *ejusdem generis* with the particular things mentioned. This is because it is presumed the testator had only things of that class in mind ; but this rule of construction rests on a mere presumption, easily rebutted by any thing that shows the larger subject was in fact in the testator's view In the present case, it is quite plain the testator had in mind all his estate, whether realty or personalty, when he made the disposition of the residue. Indeed, he must have had his real estate, or the proceeds of his sale, mainly in view ; for, as we have said, he knew that his personal estate would be exhausted by the payment of debts and prior legacies. And this appears in the language he used. He gave unto his " kind and affectionate son " all the rest and residue of his estate of which he might die seised or possessed, not otherwise devised and bequeathed (enumerating some species of personal effects), and all personal effects of every description, not otherwise disposed of by the will. This included not only that which he possessed, namely, personalty, but also that of which he was seised, — his realty. The form of his expression denotes that he had before his mind at the time alike every thing that was real and every thing that was personal ; and, in

making the bequest, he used the most comprehensive language which could have been adopted.

The residuary gift, therefore, ought not, in view of the whole will, to be construed as embracing only the remainder, if any, of that which was personalty at the death of the testator. Its scope was larger. It embraced all of the testator's estate, both realty and personalty, not devised or bequeathed by the preceding dispositions of the will.

This construction is fortified by another consideration. Carberry S. Hilton, the residuary legatee, was a favorite son of the testator. This appears from the manner in which he is more than once spoken of in the will. No other pecuniary legacy is given to him; and it cannot be believed that his father intended, by his residuary bequest, to make to him a barren gift, and leave a portion of his estate to descend under the intestate laws.

We conclude, therefore, that the Supreme Court of the District erred in its construction of the will and in the decree made, so far as it was ordered that any portion of the residue of the testator's estate, after the payment of his debts and of the legacies prior to that given to the residuary legatee, should be equally divided among the heirs, and in not decreeing that the whole of the estate, except the lot devised, both real and personal, after the payment of those debts and legacies, passed, under the residuary clause, to Carberry S. Hilton.

*Decree reversed, and the record remitted with instructions to enter a decree in accordance with this opinion.*