# OHIO NISI PRIUS REPORTS.

## NEW SERIES—VOLUME VIII.

CAUSES ARGUED AND DETERMINED IN THE SUPERIOR,
COMMON PLEAS, PROBATE AND INSOLVENCY
COURTS OF OHIO.

---

### CONSTRUCTION OF WILL CONTAINING A TERMINABLE TRUST.

Common Pleas Court of Williams County.

SIMEON GILLIS, ADMINISTRATOR, v. HARRIET H. LONG ET AL.[*]

Decided, March 9, 1908.

*Wills—Rules of Construction and Extent to Which They Should be Followed—Reading the Instrument in the Light of Extrinsic Circumstances—Presumption as to Intention—Application of Section 5970—Devisable Estates—False Description of Realty—Restricted Titles—Life Estates—When an Unqualified Estate May be Cut Down—Reconciliation of Conflicting Provisions—Postponed Payments—Legacy Charged Upon Land Vests, When—Suspended Interest Becomes a Contingency, When—Trustee to Manage Property and Clothe Cestui que Trust with Absolute Title at His Discretion.*

1. Relief can not be granted against an incorrect description of real estate in a will, unless there is something in the will itself which points to property actually owned by the testator, and affords a foundation for testimony identifying such property as the property which the testator was attempting to devise; otherwise there

---

[*] Affirmed by the circuit court in a memorandum which appears at the close of this opinion.

can be no correction of the false description, and as to the property to which it is sought to apply the false description it must be held that the decedent died intestate.

2. A legacy of $3,000 and a remainder interest in land were left by testator "to my brother L for the use and benefit of my son P, with the direction that at any time my son P shall give evidence that he has become economical and industrious" which, in the opinion of L, justifies the placing of the absolute estate in P, the trustee shall "convey said property" to P; otherwise L shall manage the same and pay out the net profits thereof to P's maintenance. The payment of the legacy is postponed to the determination of the same life estate which supports the remainder devised in trust. The will has no residuary clause and no provision for the devolution of the estate given in trust, should the trust fail. The son P died testate before the life tenant and before the trustee had taken any step to terminate the trust. *Held:*

The legacy vested in behalf of the son, and in his trustee as of the death of the testator, and the legal and equitable title thereto, and to the remainder in fee in the real estate, merged in the son's estate at his death and passed absolutely to his devisee and legatee.

3. The payment of a legacy is postponed until the death of a life tenant and is made a specific lien upon the remainder estate. The legatee died before the termination of the life tenant. *Held:*

It appearing that the postponement of payment was not personal to the legatee but was for the convenience of the remainderman upon whose remainder estate it was charged, the legacy vested at testator's death and the lien of its payment did not lapse with the death of the legatee.

*O. C. Beechler,* for Gillis, Administrator.

*Newcomer & Gebhard,* for Harriet Long.

*R. L. Starr, C. A. Bowersox* and *Lyman, Lyman & O'Conner,* for Anna T. Long.

KILLITS, J.

This action was begun as a proceeding in this court to sell the lands of John P. Long, deceased, to pay debts due from his estate. It has become enlarged to include an interpretation and construction, generally, of the will of George E. Long, deceased, who was the father of John P. Long, and from whom, through the will before us, were derived the lands which the plaintiff seeks by this action to sell. A sale has been had and confirmed, and upon distribution it has become the duty of the court to

make a partial construction of the will. All the parties interested in a complete interpretation of the instrument being necessarily before the court as parties interested in that portion involved in the distribution, they have by cross-petition and other pleadings submitted the entire will to the court's consideration.

The enlarged duty of the court and the incidents pertaining to the distribution, give rise to several interesting questions, the solution of which is not easily arrived at.

George E. Long, the testator, died in 1898, at the age of seventy-eight years, leaving a widow, the defendant Harriet, and two children, Parker and John P., his heirs in law. The will in question, which was executed in 1897 and was drawn up by the testator himself, left the homestead and all his chattels of every description, but subject to the payment of debts, to the widow absolutely. The subsequent clauses, in which are contained the provisions giving rise to doubts, are as follows:

"I also give to my beloved wife my farm in St. Joseph township during her natural life, also my interest in the Brick Block on the north side of the public square in Bryan, known as Long's block, during her natural life.

"I give and devise to my son, John P. Long, my farm known as the Denmark farm, he to get possession after the death of my wife, encumbered as hereafter set forth.

"I give and bequeath to my brother, John W. Long, for the use and benefit of my son, Parker, my interest in the Brick Block heretofore named after the death of my wife. Also lot twenty-five (25) in Edgerton's addition to the village of Bryan. Also three thousand ($3,000) dollars in money which I hereby make a lien on the Denmark farm.

"It is my will and I direct my said trustee that at any time my son, Parker, shall give evidence that he has become economical and industrious, I direct that he convey said property to him, but in case said son does not give evidence of habits of industry, prudence and economy as would in the judgment of my said trustee justify him in so conveying said property to said son, I hereby authorize said trustee to hold said property and care for and rent the same and collect all rents and interest on moneys and pay all taxes and other expenses and apply the remainder on an amount necessary for the maintenance of Parker."

The concluding paragraphs nominate John W. Long executor and provide for the omission of bond and appraisement. The land devised to the widow for life and described as "My farm in St. Joseph township," is the same land subsequently referred to as "the Denmark farm."

The son Parker was thirty-one years old the time the will was executed, the year prior to testator's death. He was idle and somewhat dissipated in habits and lived with his parents. He died in 1902, having never married, and left a last will and testament which was admitted to probate, and in which he attempted to give to his mother, the defendant Harriet, all the interest in his father's estate set apart in the latter's will for his benefit, by the provisions quoted above. There is no dispute but that Parker's instrument is sufficient to clothe his mother with whatever devisable interest he may have through the will of his father or in his father's estate. He never directly benefitted from the latter, both by reason of the fact that his mother outlived him, and because his uncle, John W. Long, never exercised the discretion given him by the will and never executed the trust to convey to Parker an absolute interest in the devise and bequest for his use and benefit.

The uncle and trustee for Parker, John W. Long, never qualified as either executor or trustee and never took any steps, as we have just said, to divest himself of the responsibility upon him for the benefit of Parker. He died testate in 1905, and his widow and beneficiaries under his will are parties to this action. He was a physician in active and extensive practice, a man of fine character and judgment, and was fourteen years the junior of his brother, being sixty-two years old when the will was executed.

The testator, George E. Long, had also been a physician but had long before his death retired from practice. He had been probate judge of the county, wherefore he was commonly called Judge Long, by which name we shall hereafter refer to him, and was a man of more than ordinary intelligence and of strong and excellent character. To him the idleness and dissipation of Parker were a source of great anxiety.

The younger son, plaintiff's decedent, was twenty-nine years old at the time the will was executed. He was then married and had entered upon the promise of a prosperous business in the retailing of drugs and other merchandise usually sold therewith. He died intestate in 1903 subsequent to the death of Doctor Long, Parker's trustee. He left a widow, the defendant, Anna Tressler Long, but no children, the marriage having been without issue. At the time of the execution of his father's will, and, in fact for some time after the latter's death, the habits of John P. Long were not noticeably objectionable, but thereafter they became such as to involve him in serious financial difficulties out of which came incumbrances in large amounts upon all his property, both in hand and in expectancy, necessitating a sale of his remainder in the Denmark farm in order to administer upon his estate. This land was sold for $16,532, subject to Harriet's life estate, and free of the dower of Anna, who was thirty-five years old at the time and who elected to take her dower in money.

Lot 25 of Edgerton's addition to the village of Bryan, was never owned by Judge Long, but at the time his will was executed and at his death he owned lot 22 of Bostater's addition to the village, which lot fronted on Edgerton street. The two lots are at least a quarter of a mile apart. The additions are not contiguous.

At the time the will was executed, in 1897, the Denmark farm diminished by an incumbrance of three thousand dollars, was approximately equal in value to the interest of Judge Long in Long's block with the lot in Bostater's addition plus three thousand dollars, wherefore the provisions of the will for the two sons were about equal, leaving out of consideration the restriction upon Parker's absolute control of his interest.

Upon these as the principal facts all the questions before the court touching the interpretation of Judge Long's will are founded, although other facts of less relevancy may occur for reference in the following discussion. It is plain that the court has before it no easy task. The combinations possible upon the varying elements of human feelings and interests being

practically infinite, it follows that substantially every last will and testament sufficiently ambiguous to require construction is *sui generis,* wherefore close precedents are hard to find; but consideration of the similarity of the operations of affection and of reasonable conduct under all circumstances has brought about certain rules of construction which are supposed to ensure the result which the average reasonably minded testator must have had in mind.

The controversies are principally between the two widows. Harriet claims that the third and fourth paragraphs quoted above from the will are sufficient to have vested in her son, Parker, a devisable estate in fee in the several descriptions of real estate, and a present right to the legacy of three thousand dollars charged upon the Denmark farm, which he might bequeath, all of which property passed to her by will, wherefore she is now the owner in fee of the interest in Long's block and has the right to have distributed to her, first after the charges of sale, three thousand dollars of the proceeds of the sale of her son John's remainder in that farm. She also claims that the court has the right to find that her husband intended to convey the lot 22 in Bostater's addition by the erroneous description of lot 25 in Edgerton's addition, and that her title to the lot in Bostater's addition should be quieted to her in fee.

In behalf of Anna it is insisted that, having died before his mother, and not having been clothed with an unrestricted title by reason of the fact that Dr. Long never attempted to determine the conditions laid down in the will upon which an unrestricted estate should go to him, Parker never obtained an interest in his father's will which he, in turn, could devise and bequeath to another, wherefore the three thousand dollar legacy, the vesting of which she claims was postponed until after Harriet's death, lapsed, enabling her husband, John, to take the remainder in the Denmark farm free of that lien; that the interest in the Brick block and the town lot became intestate property of Judge Long's estate which her husband inherited upon the theory that nothing had vested in Parker except a life estate upon his mother's life estate. And she asks that she may

have her dower in the Denmark farm protected against the alleged lien by way of the disputed legacy, and that, under Section 4158, Revised Statutes, she may be found to be vested with a life interest in the Brick block and the town lot, with remainder to the heirs of her husband who are of the blood of his father, and who are parties to this action, being a brother and sister of Judge Long and children of two deceased brothers. The latter have filed no pleadings of any kind.

It is seen that the court has a triple duty to perform, in that no two of the three provisions for Parker, contained in the third paragraph quoted above from the will, may be considered together; the interest in the Brick block, the town lot, and the legacy, each requiring in part different treatment.

The paramount duty is to first ascertain the testator's intention and then to order it into effect. To that end all rules of construction are to be followed only as they are seen to be aids to a determination of that intention, and no rule, however sanctioned by usage, may be applied to a thwarting of testator's plain intention (*Baldwin* v. *Humphrey*, 4 C. C., 57; 2 C. D., 417). We must find the intention in the instrument itself, and all parts of the instrument may be, and should be, if necessary, considered together as speaking the testator's wish in each part (*Townsend* v. *Townsend*, 35 Ohio State, 477). We can refer to intrinsic circumstances touching any subject in the will and read the instrument in the light thus gained, if any (*Thompson* v. *Thompson*, 4 Ohio State, 333). We may presume that, when it appears that testator's mind was directed to any particular portion of his property, it was not his intention to die intestate in any degree as to that portion, and we should put such a reasonable construction upon his equivocal words or expressions as will prevent such a result (*Collier* v. *Collier*, 2 Ohio State, 369). In cases of doubtful construction we may presume that testator intended to treat all members of a class with equality (20 American & Eng. Ency. of Law, 2d Ed., 669). Where it is proper to indulge the presumption of equality of participation in testator's bounty a construction should if possible be avoided which will cause the provision for one to fail to the conse-

quent enlargement of the shares of others of the same class (*Benedict* v. *Webb*, 96 New York, 460).

Added to these and other guides to construction which may be hereafter noted in passing, is our statute, Section 5970, which reads:

"Every devise of lands, tenements or hereditaments, in any will hereafter made, shall be construed to convey all the estate of the devisor herein, which he could lawfully devise, unless it shall clearly appear in the will that the devisor intended to convey a less estate."

This statute is by its terms a rule of construction only, not of property, to be employed when it aids in the ascertainment of intention, and to be disregarded when its observance is plainly subversive thereof. It proceeds upon the theory that the testator is presumed to have intended to complete the testamentary undertaking upon which he entered, and when that presumption is plainly inapplicable to the particular provision under consideration, the statute has no application, otherwise the statute controls.

In this case counsel have filed painstaking, exhaustive and able briefs in attempts made on both sides to illuminate every point which the court might deem important. We can not, however, undertake to discuss all the subjects covered by the briefs and arguments, but must, perforce, confine this opinion to those authorities and arguments only which impel us to the conclusions found herein, and we will take up the three questions of construction in order of their difficulty, beginning with the least difficult, that dealing with the town lot.

As to that we are of the opinion that we can not correct this description and that, as to lot 22 in Bostater's addition, Judge Long died intestate. The rule upon the subject of erroneous descriptions is well stated in the case of *Christy* v. *Badger*, 72 Iowa, 581 (34 Northwestern, 437), in which the devise was of a "small farm in Wayne county, near the Missouri line." The testator owned no farm in Wayne county but did own one in Lucas county, which was not referred to in his will. In Wayne county he owned a woodlot of ten acres which he had purchased

in connection with the Lucas county farm, six miles distant. The court held that the description could not be corrected to pass the tract in Lucas, and, in its opinion, laid down this rule, which has since been generally quoted and followed with approval:

"If, after the false description is discarded, there remains in the devise language sufficient to direct to the identification of the subject with sufficient certainty, an estate will pass thereby. But when the false language is eliminated, and nothing remains directing inquiry which may result in discovering the true subject of the devise, it is void."

This rule is, in fact, the one followed by our own courts in several cases in which the maxim of *Falsa demonstratio non nocet* was applied (*Ashworth* v. *Carleton*, 12 Ohio State, 381; *Banning* v. *Banning*, 12 Ohio State, 437; *Merrick* v. *Merrick*, 37 Ohio State, 126). In each of these cases, the court, reading the whole will, is able to discard the false description and find enough left to apply to the correct description of the property which the testator actually owned and which it is presumed he intended to devise. It is conceded that the slightest means of identification may be seized upon to avoid intestacy after discarding the erroneous description, as in the Merrick case in the 37th Ohio State. A leading case on this phase of the subject is *Eckford* v. *Eckford*, 53 Northwestern, 345, reversed on rehearing, 58 Northwestern, 1093 (Iowa), 26 L. R. A., 370, wherein the court, on rehearing, found that a claim of ownership recited in the will was sufficient to avoid the effect of the decisions which prevented a correction in a case like this at bar. Here dropping out the words of description which locate the lot in Edgerton's addition and giving the number, 25, there is nothing left in the will upon which identification of the lot actually owned may hinge. Unlike the Ashworth case (12 Ohio State, 381) where there was a correct designation of the fraction (twelve) but an incorrect numbering of the township, there is here both a wrong number (twenty-five instead of twenty-two) and a wrong addition. Had the devise described the lot as number 22 in Edgerton's addition, we might have dropped out the

name of the addition, and applied it to lot 22 in an addition of another name but on Edgerton street; nor is there here the little that there was to help the devisee out in the Merrick case, *supra,* the fact that a life estate had been given the widow, for as to whatever town lot Judge Long intended to devise by this description, it is indisputable that he never attempted to give to his widow a life interest in it.   An examination of every case in which a devisee has been relieved against an erroneous description, at least so far as we have been able to examine the authorities, will show that the instrument contained some shred of thought, after rejecting the words which were inapplicable to the property, from which, aided by extrinsic facts, might be gained a reference to the right premises; but, unless there is something in the will which points to the premises actually owned by the testator and which, it is claimed, he intended to describe in the disputed devise, something which may serve as a foundation for testimony helping out the application, such testimony can not be received.   The distinction is better stated in the opinion in *Fitzpatrick* v. *Fitzpatrick,* 36 Iowa, 674 (14 American Reports, 528, 546):

"In all the cases coming within the scope of our investigations of this question, where extrinsic evidence has been admitted to remove a latent ambiguity, the language of the will after rejecting the false description, has been sufficient to show what property or what person was intended by the testator. * * * If there is no person or property corresponding to the description in all particulars, but there is one corresponding in many particulars, and no other that can be intended, the false description will be rejected, and the property corresponding to the description in other particulars is held to pass, or the person thus answering the description will take under the will. But we have seen no case where other words than the words of the devise have been allowed to be imported into the will in order to describe a devise, or to identify property to which the words of the description in the will did not apply, upon the principle above stated.   And when, by rejecting the false description, the remaining words do not describe the person or property to any extent, parol proof to show the testator's intention is inadmissible."

It is manifest in Judge Long's will, that there is nothing in the terms of this devise, or elsewhere, remotely descriptive of or in reference to lot 22 in Bostator's addition or any other town lot except his homestead and the lot in Edgerton's addition, and it would seem that in this respect this case is not only clearly distinguishable from the cases in Ohio to which we have referred above, but that to permit the devise to apply to the lot not described would be to subvert all the principles which require wills to be in writing, and to reject all authority.

The authorities on the subject are exhaustively reviewed by Judge Kinne, of the Supreme Court of Iowa, in his dissenting opinion in the Eckford case, his dissent being only upon the sufficiency of the words left in the will, after rejecting the misdescription, to identify the property (26 L. R. A., 372). Other authorities examined by us are: *Sturgis* v. *Work* (Indiana), 22 Northwestern, 996; *Bingel* v. *Voltz* (Illinois), 16 L. R. A., 321; *Sherwood* v. *Sherwood*, 45 Wisconsin, 357; *Kurtz* v. *Hibner* (Illinois), 8 American Reports, 665.

We conclude therefore that we can not apply the devise to a conveyance of the lot in Bostater's addition, and that, as to that tract, Judge Long died intestate, and title descending according to the statute and the will of Parker Long, which would clothe the widow, Harriet, with an estate in fee in the undivided one-half, and dower in the remaining moiety, in which Anna Long, by virtue of Section 3138, would have a life estate subject to her mother-in-law's dower, with remainder in fee to the heirs of John P. Long of the blood of his father, who are the defendants Laura L. Riggs, William H. Long, James W. Long, subject to his mother's dower in his share, and Emma L. Taylor. Of course, if the proceeds of the sale of the Denmark farm are insufficient to meet the demands of administration upon the estate of John P. Long, which seems probable, the undivided half of this lot inherited as intestate property by John P. Long would be subject to sale to pay his debts, in which case his widow would have dower only, subject to Harriet's dower therein, and the remote heirs would take nothing, as there would doubtless be no surplus to be distributed as representing their minute interests.

Considering; next, the three thousand dollar legacy, which was made a lien upon the land sold, it is manifest that the initial difficulty is to determine whether or not it vested for Parker's benefit at the death of the testator.    Before attempting a solution of this question, it is profitable to review the elements entering into it.

First.    It seems to be the only conclusion that Judge Long did not intend this to be a charge on both Harriet's life estate and John's remainder, but rather upon the latter alone.    Although the words of this bequest, "I give and bequeath," followed by the words, "which I hereby make a lien on the Denmark farm," are in the present tense, we can not believe that the testator meant that it should be applied to present interests in those premises.    Mrs. Long's devise of a life estate in the previous paragraph is without qualification or diminution.    While it is undoubtedly the rule that an unqualified devise in an early provision may be cut down by subsequent language (*Baxter* v. *Bowyer*, 19 Ohio State, 490), this same authority demands that we should use all reasonable means to reconcile apparently conflicting provisions, to give them both the effect in full which, after a consideration of all the will, enlightened by extrinsic facts, it is judged the testator reasonably intended.    To effect this result our court has adopted Jarman's rule 12, which reads in part as follows:

"That an express and positive devise can not be controlled by the reason assigned, or by any subsequent ambiguous words, or by inference and argument from other parts of the will." *Parker* v. *Parker*, 12 Ohio State, 93, 103.

Second.    The most reasonable interpretation seems to be that the time of payment was intended to be postponed until the termination of the life estate in Harriet.    It is incredible to assume that Judge Long intended this legacy to take the course of legacies generally, to be due and payable one year after his death, and to draw interest thereon until paid, and to be charged with its accruals of interest, against John's remainder during the uncertain period of his mother's life; it is unbelievable that he intended thus to burden John during a time when the latter

was unable to draw any usufruct whatever from the provisions for him. It seems to have been the testator's clear intention that neither of his sons should have any direct benefit from this will during the mother's life time, except, perhaps, as to the erroneously described town lot, in which he omitted to create a life estate.

Third. The foregoing arguments lead us to the next element, namely, that the postponement of payment is not from any consideration personal to Parker or his trustees, but was for the convenience of John and the estate generally. The time of payment, assuming that it is postponed, does not enter into the substance of the gift, as in all the cases in which it is held that vesting also is postponed, but the gift is distinct from the time of payment. If these were all the elements of this situation, we would have no trouble in reaching the conclusion that this legacy vested at Judge Long's death and did not lapse at Parker's death. *Linton* v. *Laycock,* 33 Ohio State, 128, 135; *Collier* v. *Grimsey,* 33 Ohio State, 17; *Bolton* v. *Bank,* 50 Ohio State, 290; *Thompson* v. *O'Dell,* 12 Circuit Decisions, 396; *Weymouth* v. *Irwin,* 7 Ohio Decisions, 92; *Bushnell* v. *Carpenter,* 92 New York, 270; *Loder* v. *Hatfield,* 71 New York, 92; 30 Ency. of Law, 2d Ed., 767, 781.

In behalf of Anna Tressler Long it is contended that because Parker died before time of payment of this legacy, the lien upon her husband's remainder in the Denmark farm failed, and John took his devise exonerated from the encumbrance, and, among other authorities, 30 Encyclopedia of Law, 793 and 794, is cited, but the same authority, on the last page cited, states that the rule claimed by her counsel has been modified to exclude just such legacies as we have found this to be. The text in that behalf, sustained by numerous authorities, is:

"This rule, however, has been modified, and a legacy charged upon the land shall be deemed vested  *  *  *  where payment of the legacy is not postponed from any consideration personal to the legatee, but for the convenience of the estate. In such a case the legacy will vest even though the legatee dies before the time fixed for payment." 30 Ency. of Law, 2d Ed., 794.

Our difficulties respecting this particular provision are not over, however, for it has so far been treated as if it had been a bequest directly to Parker instead of in trust for Párker. How far this additional element will operate to change the nature of the estate from a vested one to a contingent one is a matter of doubt, to dissolve which we are not able to refer to any specific authority, although the cases hereinafter considered are almost in point to hold that this feature does not make any difference. The law, however, favors vested rather than contingent interests (30 Ency. of Law, 765) and it is undoubtedly the duty of the court to construe a bequest as vested when in doubt. *Bolton v. Bank,* 50 Ohio State, 290, 293.

The opinion in this case seems to settle this point, as applied to the feature of this legacy now under consideration, and likewise seems to take out of controversy the difference that Parker's bequest was equitable only. The court says, pages 293 and 294:

"It is the settled rule of this court to construe all devises and bequests as vesting in the devisee or legatee at the death of the testator, unless the intention of the testator to postpone the vesting to some future time is clearly indicated in the will.  *  *  * The only distinction between this case and the previous one is  *  *  *  that the estates of the devisees are equitable and not legal. But this does not affect the question, for it is well settled that equitable estates vest and descend as legal estates."

With this we still, however, have to reckon with that provision of the will which restricts Parker's interest to the "use and benefit," with no absolute control until after the condition is met upon which Dr. Long may act to divest himself of this trust.

This situation gives rise to the query whether a proper construction of the will is that Parker was to get a beneficial estate for life only, to be enlarged to an absolute estate upon the happening of a condition precedent, or whether it should be that Parker was given an absolute equitable estate which he might extend to a legal title by meeting a condition, which is a condition precedent only to such extension. This question is equally

applicable to the Brick block.   In Ohio, "the same construction is followed in gifts of personalty as in devises of realty" (*Thompson* v. *O'Dell,* 12 Circuit Dec., 396, 399) ; wherefore we may henceforth consider the two provisions together.

We are now facing the real problem of Judge Long's will: Did Parker have something resulting from the will and touching the three thousand dollar legacy and the Brick block, which he could in turn pass by will; something which his heirs would inherit had he died intestate?   If his will, respecting these properties, avails nothing, then it is manifest that Judge Long died intestate to the extent of the principle of the legacy and the remainder in the Brick block after the death of Parker.   In such a case, Anna Long, as the widow of her childless husband, would not have an estate for life in the business house, and the whole principal of the legacy, as her counsel contends, but her interest would be in a moiety only of these properties, for Parker would inherit equally with John in this partial intestacy, and Parker's share would pass under his will to his mother. The inheritance in which her husband, John, became interested, assuming the partial intestacy, relates back to the death of Judge Long, and was not postponed until after the death of Parker. In other words, if the will is insufficient to pass the whole interest to Parker, subject only to a restriction upon his control, but does no more than to pass a life estate with a possibility of enlargement to an absolute ownership, which possibility ceased at Parker's death, it seems certain that the suspended interest was, from the death of Judge Long, a contingency which might be held as an estate of inheritance and consequently be devisable.   *Kenyon* v. *See,* 94 New York, 563.

The claim of Anna Tressler Long, to be allowed, involves a construction bringing about a partial intestacy, a result which should be avoided, if possible, according to the rule which we have already alluded to (*Collier* v. *Collier,* 3 Ohio State, 369) and which finds expression also in the statute which we have quoted.   Courts have seen proper to go far in construing a will to avoid partial intestacy, and one of the means employed is the application of the doctrine that the general intent of the testa-

tor controls a particular direction, when they are in conflict. Page, Section 463, expresses the rule in this form:

"This conflict of intention usually arises where the testator has not carefully thought out the application of the provisions of his will to all possible states of fact, and has not, therefore, foreseen the actual contingency which has caused the inconsistency. In such a case, the court, while avoiding making a will for a man who did not succeed in making one for himself, will, nevertheless, if the general intention of the testator is clear, give effect to such intention, disregarding the particular intent of the particular clause."

This seems to be almost too strong, for it leaves to the court extraordinary latitude in comparing and weighing the evidence of general and particular intent existing in the language of the will, but, at least, a safe rule is that the general intent of testator plainly derived from the will and the circumstances under which it was executed, if it appears to be to make a complete disposition of the estate, while it may not control a particular direction, may yet be of very great weight in determining the nature of a particular devise. *Given* v. *Hilton*, 95 U. S., 591, 594 (24 Law Ed., 458).

In *Boston Safe Deposit Company* v. *Coffin*, 152 Mass., 96 (8 L. R. A., 740, 747, 748), Judge Devens says:

"When an intention to dispose of the whole of an estate appears a partial intestacy should not be recognized unless the deficiencies in the expressions of the will are such as to compel it. * * * When a reading of a whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court will supply the defect by implication and so mold the language of the testator as to carry into effect, as far as possible, the intention which it is of the opinion he has on the whole sufficiently declared."

And in *Balch* v. *Pickering*, 154 Mass., 563 (14 L. R. A., 125), the court held that the literal meaning of the words of a will should not prevail where it would not only bring about a partial intestacy but disturb the testator's manifest intention to deal equally by his beneficiaries, but that the will should be construed to preserve the general intent.

An early and abiding feeling arises from a consideration of
the terms of this will, had in connection with the evidence re-
specting the parties and their mutual relations and the charac-
ter and value of the property divided, at the time the will was
made, that Judge Long intended that his two sons should
share as equally as possible in his bounty after their mother's
estate should have terminated, and a significant feature of the
will itself is the two-fold nature of the trust he reposed in Dr.
Long for Parker. Dr. Long is a trustee in two capacities, first,
to manage the property pending the exercise of the second
trust; and, second, to clothe his *cestui que trust* with the abso-
lute title in his discretion. We are satisfied that the conditions
of the second trust are not void as being unreasonable and un-
certain, and that they are, in fact, conditions precedent. It is
clear that the testator did not intend that an unrestricted es-
tate should be put in Parker's hands until the favor was earned.
But, reaching this conclusion, are we compelled to say that
nevertheless Parker could not pass the principal of the legacy
and the fee in the building by will? It must be conceded that
this second trust is wholly personal to Dr. Long and that it
could not be executed by any one else; that testator did not in-
tend it to be executed by any one else. Such a personal trust
dies with the trustee, and the first trust passes into the estate
of decedent until the selection of a successor to hold the legal
title during Parker's life. Says the court in *Gimbel* v. *Tripp*
(Maryland), 15 L. R. A., 235: "Whenever a power is of a
kind that indicates a personal confidence, it must, *prima facie,*
be understood to be confined to the individual to whom it is
given"; and in *Baker* v. *McAden* (North Car.), 24 S. E., 531,
it is said that such a trust is not succeedable for the reason that
a court "could not appoint a successor trustee because it could
not invest him with the confidence of the testator." *Hinckley*
v. *Hinckley* (Maine), 9 Atlantic, 897; *Security Company* v.
*Snow*, 70 Conn., 288 (39 Atl., 153); Page on Wills, Section 619.

We are not willing to say that the death of Dr. Long before
the execution of this personal trust would have had the effect
to clothe Parker with complete dominion over the provision in

his behalf.   Such result would certainly violate testator's intention.

To the court's mind some importance should be attached to the fact that Judge Long left to one person only the power to clothe the son with an unrestricted ownership of the devise and legacy for him.   We should not forget that the testator was a man of more than average ability and intelligence, who, as judge of probate, must have acquired some familiarity with testamentary matters, out of which familiarity he essayed to write his own will; that he was plainly attempting to treat his sons equally in the usufruct, at least, of his estate, distinguishing between them only as he was forced to do because of the habits of the elder; that this elder son was still a young man, with possibilities of marriage and paternity still features of his future; that the testator saw fit to omit a time limit to the execution of this trust while yet he deemed it prudent to cast it upon an old man with whom it might die long before Parker's opportunities to fairly earn its benefits might be foreseen to be lost; and, finally, but not least in importance, that testator omitted to make any provision for the devolution of this property, either directly or in a residuary clause, in case this personal trust should fail.   In the provisions under consideration, as we shall see hereafter, the testator uses language sufficient to convey a fee and an absolute interest in the principal of the legacy, and he uses such language consciously, for he empowers his brother to convey a complete title.   In his language there is a pathetic suggestion and hope, reading between the lines, that his erring son might be encouraged to a better mode of living, and then become entitled to complete control of his estate, such as the brother was to enjoy.   Is it conceivable that this testator, considering the care he took in hedging Parker's interest about that it might not be frittered away in idleness and dissipation, and, and considering also his intelligence and manifest desire to be just, should have overlooked the possibility of Parker's failing to earn his uncle's good will before the latter's death? And, conceding that Judge Long must have had in mind this disagreeable alternative, is it conceivable that he would have

omitted a provision for the remainder upon Parker's failure to earn the fee, had he not intended that all the interest of his estate in both building and legacy should pass to Parker and Parker's estate, by the language already employed? Would not a man of his intelligence have looked out for and provided for possible heirs of Parker's body, under such circumstances, if he did not intend the language to be sufficient?

That the great question now in hand is not free from difficulty is shown by the fact that the authorities are not harmonious. While they are reasonably numerous on both sides, by far the greater weight leans to that which upholds Parker's right to dispose of both principal of the legacy and the fee by will, upon the theory that the legal estate was vested in his trustee and the equitable estate in fee in him, and that at his death the two estates coalesced to be enjoyed by his heirs or his legatees and devisees, according whether he died testate or intestate. Counsel for Anna Long insist that the condition that Parker shall show habits of industry and prudence and economy is a condition precedent, which failing, the estate fails. We have already agreed with them that this is a condition precedent, but that does not solve the difficulty, for the condition may be referred to a parting of the legal and equitable estates as well as to stand to prevent a life use from enlarging into an absolute estate. Equitable estates, whose owners may transmit by inheritance or devise an absolute legal estate, are quite commonly recognized, as will appear from authorities which we will hereafter cite. Aside from cases and texts which counsel use to make their claim that the condition is one generally precedent, we are referred to but four cases, *Markham* v. *Hufford* (Michigan), 82 N. W., 222 (48 L. R. A., 580) ; *Donohue* v. *McNichol,* 61 Penn. St., 73; *Webster* v. *Morris,* 66 Wis., 367; and *Cassem* v. *Kennedy,* 147 Ill., 660 (35 N. E., 738), supporting their contention that its performance precedes an absolute estate. We have found, in our own library and in the county law library, three other cases, *Paulson* v. *Paulson* (Wisconsin), 107 Northwestern, 484 (5 L. R. A. [N. S.], 804) ; *Stark* v. *Conde,* 100 Wis., 633; *Jarboe* v. *Hey,* (Missouri) 26 S. W.,

968. Possibly there are other cases which support Anna Long's claims, but we have not been cited to them by her counsel. Each of these cases is weakened as authority by conditions in their facts which well distinguish them from the case at bar. In *Markham* v. *Hufford* the provision of the will was for a legacy of $500 to be paid at the end of two years after death of testator provided the legatee should be then deemed to be a reformed man. It was held that reformation within the time was a condition precedent, and that the legatee got no vested interest in the legacy. The will had a residuary clause as well as an imperfectly worded provision for the devolution of this sum in case it did not vest in the legatee.

In *Webster* v. *Morris* the conditional beneficiary was yet an infant when the suit was brought and decided. He was the grandson and sole heir at law of testator, and was beneficiary under an item which provided that $10,000 should be invested and sufficient of the proceeds used for his education until maturity, at which time he was to be paid the unexpended income. Thereafter, until he was thirty years old, he was to be paid the net income of the fund, when he was to have half of the principal and the balance in yearly installments of a thousand dollars, provided that, in the estimation of the executors and before payments were to be made out of the principal, the beneficiary should have acquired a useful vocation and should exhibit a good moral character. There was a special provision that if he died "without leaving an heir" and before the legacy was paid him, it was to go to charity, and there was also a general residuary clause. The action was to construe the will and in behalf of the boy it was claimed to be ambiguous and void for uncertainty, and the decision goes no farther than to uphold the provisions as reasonable and certain. Had there been no gift over and no residuary clause, there is nothing in the decision inconsistent with the proposition that had the beneficiary died before the maturing of the ultimate condition, his heirs or legatees might obtain the corpus of the gift.

In *Stark* v. *Conde*, the provision was for a legacy to be paid to the beneficiary when he arrived at the age of thirty years,

if at that time the executor was of the opinion that it might be safely entrusted to him, and if the decision was against the legatee the bequest was to go to other parties.

In *Paulson* v. *Paulson*, $1,500 were bequeathed to a son to be paid in fifteen annual installments, provided he attended a certain church with regularity, otherwise the fund was to go to charities.

In *Cassem* v. *Kennedy* a house and lot were devised with the provision that the devisee should not enjoy the benefit of the devise until he settled down and got married, or until he became forty years old, in either of which events, if he satisfied the county judge that he had acquired regular habits or had gotten married or had reached the age, he was to take his title. There was a provision that if, in the meantime, he became injured, he was to have the rents and profits only. A few months after testator's death devisee attempted to sell the property, and it was held that these were conditions precedent because of which no title could pass until one of them was met. The report is silent as to other provisions of the will, if any.

In *Donohue* v. *McNichol* all the real and personal property was given to a trustee, executor of the will, and out of the income enough was to be used to support a son respectably, provided that if the son became sober, he was to enjoy the entire income. The son died without reforming, and it was held that he had taken no title to the real estate, but only a conditional life estate in the profits which also failed because the condition was not performed. The will contained a devise over.

In *Jarboe* v. *Hey* one-third of testator's real estate was devised to a son in trust for another son, Charles, upon these conditions: The trustee was to manage the property and out of the profits provide Charles with two suits of clothing yearly, and use twenty-five dollars per month for the maintenance of Charles; provided that whenever the trustee deemed that Charles had reformed, and had become capable of using money for proper purposes, one thousand dollars of the accruals of rents and profits might be given him, and it was directed that, after the expiration of one year from the latter event, if the trustee had become convinced that Charles had become of prudent and careful habits,

he might turn over to him the real estate and moneys of the trust absolutely, but if the time never arrived when the trustee deemed it prudent to carry out the trust, then the property should remain in the hands of the trustee under the conditions named and, at the death of Charles, it should go to his heirs. The will also provided for a succession to the trust in case the appointee died before Charles.

Distinct and vital differences appear between the terms of Judge Long's will and the instruments in the several cases just considered. First, in each of these seven cases the will makes provision for the devolution of the property given in trust in case the conditions should fail, either by a general residuary clause or by a special gift over, and in some cases both provisions appear; that is, there was, in any of these estates, no possibility of whole or partial intestacy, no contingent intestacy possible to result from the failure of the conditional beneficiary to earn an absolute title. Second, in neither of the seven wills, except in the Webster-Morris case, was there provided a complete enjoyment of the "use and benefit" of the trust property to the *cestui que trust*, during the probationary period. In the Markham, Paulson, Stark and Cassem cases, the beneficiary was to derive no benefit whatever from the provision for him until the conditions were met, except that Cassem, if he became injured, was to enjoy an income, while in the Donohue and Jarboe cases he was to have but a partial interest in the net rents and profits. Third, in the Markham, Stark, Paulson and Webster cases, each testator fixes an exact time limit at or before which the beneficiary must meet the conditions or lose his conditional gift, which was then to go over. In addition to other matters, the Cassem case is peculiarly different from the case at bar in that there the beneficiary was to get his gift without conditions if he lived to be forty years old. Considering the radical differences between these other wills and Judge Long's testament, these cases are seen to have much less value as authority than but a superficial reading would suggest.

On the other hand, the diligence of counsel for Harriet Long has brought to our attention a large number of cases from many jurisdictions whose courts have good standing, all of which

support the result at which we arrive in this case, both as to the bequest of three thousand dollars and the devise. In this already too long an opinion we can discuss only those most nearly in point. In *Appeal of Mills, In re Boies' Estate* (Pennsylvania), 35 Atlantic, 724, from a court which decided *Donohue* v. *McNichols, supra,* testator devised and bequeathed certain property in trust for his son M, providing that the entire net income should be paid M during his life, in quarterly installments, and the trustee was given the power, if at any time, in his judgment, M reformed and ceased to use intoxicating drinks, to pay him from three to five thousand dollars to enable him to engage in business. A codicil made it clear that testator meant that his other children should have estates in fee in their shares but did not clear up the problem as to M, who died without children, but leaving a will. The will was upheld on the precise grounds maintained in this case, that testator, using the words of the opinion, "created an active trust for Matthew's protection and benefit, limited in duration to his natural life, without making any further disposition whatever of the corpus, or otherwise restricting Matthew's authority to dispose of it as he did," and this action was taken not only to save the estate from partial intestacy, but to preserve the equality between the beneficiaries, which the court deemed to have been the testator's intention.

In *Weakley* v. *Buckner* (Kentucky), 16 S. W., 130, $2,900 were bequeathed to a trustee, who was to pay the income to the wife of a son for the family support, but neither principal nor income should be reached by the son's debts. If the son should live for five years a sober and temperate life, then the principal should be paid to him as his own property, provided he then had no debts which could reach it. The son never reformed, and died intestate. It was held that the principal passed out of the trustee's hands into the son's estate to be administered upon and to be distributed under the statutes of distribution.

In *Meek* v. *Briggs* (Iowa), 54 Northwestern, 456, the testator devised certain property in trust for A to be managed by the trustees and the income applied to her support until such time

as A should prove competent to manage it, when the title should vest absolutely in her. It was held that the title in fee vested in the trustees for A and that if A died before the property was transferred to her, the equitable and legal titles would then merge and pass to her heirs. The testator had made no provision for the devise should the property not be transferred to A in her life time. This case is very interesting in its almost complete parallel to the one at bar, and it, added to the two last considered, afford authority for the position taken by counsel for Harriet Long.

In *Lippincott* v. *Stollsenberg* (New Jersey), 20 Atlantic, 360, the court is called upon to construe two wills, with almost identical provisions, wherein the parents of William Pancoast each provide a legacy for him to be held by trustees who are to pay the income therefrom to William until such time as they deem it prudent to pay him the principal. The residue of the two estates was devised to the other children of the couple absolutely. William died before he obtained the principal of his legacy, leaving a will of the same to his wife. The will was upheld and his widow received the share, the court laying stress, as in the other cases cited above, upon the fact that neither testator had made provision for the event that the principal might never be paid William.

In *Baker* v. *McAden* (North Carolina), 24 Southeastern, 531, testator's daughters were made beneficiaries of a trust in their several favors, the trustee to distribute the income of the trust property from time to time among the beneficiaries as he thinks best, and to give the principal of her share to any daughter at such time as he thinks best. One daughter died before receiving the principal of her share, which she attempted to pass to her husband by will. The holding was that the trust was for an absolute title, and that it terminated at the death of the daughter, when the equitable and legal titles merged in her devisee.

In *Toner* v. *Collins* (Iowa), 25 Northwestern, 287, the estate was devised in trust for three daughters to be held by the trustee until the daughters should respectfully marry to the trus-

tee's approval, when he should clothe the marrying child with an absolute power of her share. There was no devise and bequest over, and one daughter died young and without having married. Her right to dispose of her share was upheld, the court holding that marriage was not a condition precedent to the vesting of title, and that the separation of the legal and equitable estates necessarily ceased at her death.

In *Canfield* v. *Canfield*, 118 Federal Reporter, 1 (Circuit Court of Appeals, opinion by Judge Day), the testator, after making minor bequests, devised the main portion of his property to his uncle, "in trust for the use and benefit of my brother." The trustee was to manage the property, and use so much of the net income as he deemed necessary for the education and support of the brother until the latter came of age, when, if the uncle deemed such a course prudent, the brother should enter into the unrestricted enjoyment of the property, but if the uncle did not then judge it best to pay over the property to the brother, it should be held by the trustee indefinitely until such time as he should "deem it prudent and proper to put the same under the management and control of my said brother." No provision was made for the contingency that the brother might not get the principal. It was held that it was clearly the intention of the testator to vest the estate in the brother subject to the right of the trustee to exercise the discretion given him, and that on the death of the beneficiary the property did not revert to the testator's estate, but vested in the brother's heirs. We ought not burden this opinion with extracts from Judge Day's reasoning, but the curious are referred to the report of the case for the same; nor will we further enlarge this decision with the consideration of additional cases.

Among many others cited by counsel for Harriet Long, the following we deem most applicable: *Kelly* v. *Jeffries*, 50 Atlantic, 215 (Delaware); *Chauncey* v. *Francis* (Mass.), 63 N. E., 913; *Powers* v. *Rafferty* (Mass.), 67 N. E., 1028; *Kinkead* v. *Maxwell* (Kansas), 88 Pacific, 523; *Twilley* v. *Toadvine* (Maryland), 66 Atlantic, 1030; *Noble* v. *Birnie* (Maryland), 65 Atlantic, 823.

If there is any doubt of the sufficiency of the language of this provision for Parker to convey the corpus of Parker's share as well as the use to the trustee, Dr. Long, attention is invited to these cases in our own jurisdiction, as well as to the discussions in the cases referred in the foregoing, and many other authorities which can be easily found: *Collier* v. *Collier,* 3 Ohio State, 369, 374; *Davis* v. *Boggs,* 20 Ohio State, 550; *Isherwood* v. *Isherwood,* 8 Circuit Decisions, 409; *Chase* v. *Isherwood,* 5 Ohio Decisions, 1.

It is settled that a devise or bequest of the "issues and profits" or "use and benefit" of a body of real estate or of a sum of money without a devise or bequest over, conveys an absolute interest in the corpus of the gift, and that a life interest only must be plainly expressed.

Our conclusions, therefore, are, that the legacy for Parker of three thousand dollars vested in his behalf and in the trustee as of the death of Judge Long, and that it did not lapse at Parker's death but passed to his mother, the defendant, Harriet, under the will of Parker, and that the latter's interest in the Brick block was an equitable interest in fee, the legal title whereof was in Dr. Long as trustee, and that, at Parker's death, these two titles merged in fee in his devisee, Harriet Long, who should have her title therein quieted against not only Anna Tressler Long, but against the widow and devisees and legatees of Dr. Long and the heirs at law of Judge Long and John P. Long. It follows from this that the proceeds of the sale of the interest of the estate of John P. Long must be distributed in part to the liquidation of Harriet Long's claim for the legacy and that such claim is preferred over every other lien upon this fund save the costs and charges of sale. However, as this legacy is not, by the terms of the will, payable until the death of Harriet Long, she is not now entitled to the full sum of three thousand dollars, but there should be paid her by the administrator in full liquidation of this lien, the present value of three thousand dollars payable at her death, computing the same according to the customary method having reference to her expectancy of life.

At the May, 1908, term of the Circuit Court of Williams County, Ohio, the case of *Gillis, Administrator,* v. *Long,* was heard on appeal, and the same judgment, order and decree was entered as was entered by Judge Killits in the court of common pleas. The opinion in the circuit court, by Wildman, J., in which opinion Parker and Kinkade, J. J., concurred, is as follows:

"In the case of *Gillis, Administrator,* v. *Long,* etc., we have considered the pleadings and evidence, together with the able and elaborate and very numerous briefs that have been submitted to us, and we will announce our conclusion. We have spent much time in the consideration of the questions involved, but we are so well satisfied, after the examination of the whole matter, with the views entertained by Judge Killits as announced in his opinion, that we are disposed to adopt them in their main features, and base our judgment thereon. The same decree as that rendered by Judge Killits below will be rendered in this court, and the will of George Long should bear the construction placed upon it by the court below. I think I need say nothing further."