In the Matter of the Estate of WILLIAM ASTOR, Deceased.

Surrogate's Court, New York County, March 28, 1946.

*Carter, Ledyard & Milburn* for William M. Cruikshank and another, as trustees, and others, petitioners.

*Olin, Murphy & Redmond* for James R. Roosevelt, respondent.

*Amend & Amend* for Helen R. Robinson, respondent.

*John W. Hannon,* special guardian of William A. Drayton, Jr., and others, infants, and for Christopher H. Phillips, a person in military service.

DELEHANTY, S. In this accounting proceeding a construction is necessary to determine the meaning of article fifteenth of the will wherein deceased gave authority for investments by his trustees in this language: " I authorize my Executors and the Trustees named in this Will to invest all or any of the funds held by them in trust on Bond and Mortgage in the public debt and Securities of the United States of the States of New York, New Jersey, Pennsylvania, Massachusetts and Ohio on first mortgage bonds of any Railroad in the United States in the public debt of any of the Cities of the United States approved of by all the acting Trustees for the time being of any of the trusts in this Will contained and in any other securities which shall be approved of by all the Trustees of any trust for the time being and by the then beneficiaries of the trust who shall be of full age."

Deceased died in 1892. He had executed his will in 1882 and in 1891 the last of several codicils thereto. The question presented is whether or not the word " securities " used in a will prepared in 1882 has a connotation sufficiently broad to cover the investments now reported by the trustees. These include certain debentures and certain interest-bearing certificates and also an issue of town bonds.

As late as the middle of the nineteenth century the term " securities " had a restricted meaning. It was held as late as 1869 in *Ogle* v. *Knipe* (L. R. 8, Eq. 434) that a bequest of

" money and securities for money " of every description did not include bank stock and canal shares. To quote from the colorful language of KEKEWICH, J., in *Re Johnson* (89 L. T. 84, 85–86 [1903]) : " Of course, it is well known that ' security ' really means something which frees you from care — that is, care as to money which you have invested, the principle, [*sic*] and perhaps the interest too — something which frees you from care, and enables you, as regards that particular investment, to be, to use a poetical expression, like ' the gods that live at ease.' " Such was the old concept of the word " security ". It was sufficiently settled as having a restrictive sense under English practice to have required statutory change at least in part to bring mere promises to pay and investments in equities within the meaning of the word. Thus, chapter 83 of 38 and 39 Victoria, the Local Loans Act of 1875, defined the term by statute to mean " any debenture, debenture stock, annuity certificate, coupon, or stock certificate to bearer ".

But by the last decade of the century even the English viewpoint had changed. STIRLING, L. J., in *In re Raynor* ([1904] 1 Ch. 176, 190) commented on *Ogle* v. *Knipe* (*supra*) and said that as of the date of his decision it had become the common understanding of mercantile men that the word " security " included stocks and shares as well as mortgages on land and other evidences of secured debts. In the 1890 edition of Webster's Dictionary the word " security " was defined as " an evidence of debt or of property, as a bond, a certificate of stock, etc.; as government securities." The New English Dictionary (Oxford 1914 ed.) defines the word as " A document held by a creditor as guarantee of his right to payment. Hence, any particular kind of stock, shares, or other form of investment guaranteed by such documents." In Cassell's Encyclopædic Dictionary (1899) the word " security " was defined as " an evidence of debt or of property: as a bond, a certificate of stock or the like ". And in *Re Beavan* (53 L. T. 245 [1885]) an English court held that promissory notes and railway debenture stocks were " securities for money " within the meaning of the will there under consideration.

There can be no doubt that in our current usage the word " securities " includes stocks and bonds (1 Restatement, Trusts, § 227, Comment u, p. 657; *Rosenthal* v. *Brown*, 247 N. Y. 479). Not only in the mercantile but in the general business and investment field the word " security " in our usage has lost the restricted meaning which it once had. At the date of the last of the codicils executed by deceased it clearly had a mean-

ing sufficiently broad to include the type of investments now in the hands of the trustees. Hence it is proper in the circumstances to construe the will of deceased as authorizing the type of investment held by the trustees unless something else in the text requires the application to the word of a restrictive meaning.

The further problem is whether the rule *ejusdem generis* furnishes such restrictive meaning in this particular will. " It is doubtless true that in the construction of wills, as well as of statutes, where certain things are enumerated, and a more general description is coupled with the enumeration, that description is commonly understood to cover only things *ejusdem generis* with the particular things mentioned. This is because it is presumed the testator had only things of that class in mind; but this rule of construction rests on a mere presumption, easily rebutted by any thing that shows the larger subject was in fact the testator's view." (*Given* v. *Hilton,* 95 U. S. 591, 598.) " The rule   *   *   *   is that where certain things are enumerated, and such enumeration is followed or coupled with a more general description, such general description is commonly understood to cover only things *ejusdem generis* with the particular things mentioned. In such case it is presumed that the testator had only things of that class in mind. (*Given* v. *Hilton,* 95 U. S. 591.) " (*Matter of Robinson,* 203 N. Y. 380, 386.)

The specific enumeration by deceased in his will is of bonds and mortgages, the public debt of the United States, the public debt of five enumerated States, the first mortgage bonds of any railroad and the public debt of any city. It is to be noted that in each instance the enumerated security is one which has a real security to guarantee its payment. In the case of the bonds and mortgages the underlying property is applicable to the debt. In the case of all the other enumerated securities the taxing power of the Nation, State or the municipality furnishes undoubted security for payment. There is however in the text of the will reference to a wholly different standard for investment. As was said in *Given* v. *Hilton* (*supra,* p. 598) the rule of construction " rests on a mere presumption, easily rebutted by any thing that shows the larger subject was in fact the testator's view." Having this comment in mind it seems clear that the will gave the trustees the broadest of powers provided all of them concurred in the investment and provided also they had the consents of all beneficiaries of full age. The text which provided so flexible a standard does not carry for-

ward the idea that only highly secured obligations like those theretofore listed were envisaged as the subject of this broader power. On the contrary the fair meaning of the text is that if the joint judgment of the trustees and the beneficiaries was that the trust should make investments less well secured such action was authorized by the will under the conditions stated.

Submit, on notice, decree construing the will and settling the account accordingly.